Opinion by
 

 Baldrige, J.,
 

 Blanche Aurand filed a claim to recover compensation for her husband’s accidental death alleged to have occurred in the course of his employment. The original defendant, Universal Carloading and Distributing Company, engaged in freight transportation and distribution of merchandise, denied that the claimant’s husband was at any time in its employ, and averred that at the time of his death he was in the employ of Daniel W. Carberry. The Fidelity Casualty Company of New York, insurance carrier, was permitted to intervene.
 

 The main question for determination is whether the Universal Carloading and Distributing Company, hereinafter referred to as the defendant, was a statutory employer. The relationship of the defendant towards the deceased depends upon the legal sufficiency of evidence to support the finding by the compensation authorities that claimant’s husband, with the knowledge and permission of defendant, entered upon the operating premises of defendant for the performance thereon
 
 *504
 
 of duties for his immediate employer. Having alleged that her husband was a statutory employee, the burden was on the claimant to establish that fact.
 

 Forrest Aurand, the deceased, was employed by Car-berry, an independent trucker, as a helper. Aurand accompanied Oarberry in transporting merchandise to New York on December 30, 1932. The next day Car-berry entered into a contract with the defendant to transport certain merchandise from pier 23, New York City, to its warehouse in Pittsburgh. The merchandise was loaded on Carberry’s truck by employees of defendant and a manifest was delivered to and receipted by Oarberry. On the following morning, to wit January 1, 1933, the bodies of Aurand and Oarberry were found in this truck in Wilkins Township, Allegheny County. Both of the men had died from the inhalation of carbon monoxide gas fumes. Unfortunately for the claimant, she was unable to, or at least did not, produce any witnesses who saw her husband on or near the pier, nor do we have any information as to when or where he got on the Carberry truck.
 

 C. F. Scheider, manager for the defendant, called by plaintiff, testified that when an independent trucker enters into a contract with the defendant to transport goods from one of its warehouses to another, the loading is done by the warehouse employees, unassisted by the truck driver or his helper. This evidence was not contradicted.
 

 In endeavoring to prove the customary service rendered by truck drivers and their helpers in loading trucks, the claimant called Millard J. Aurand, a brother of the deceased, who testified that on just one occasion, in August, 1932, he helped his brother on a truck that carried merchandise for defendant from this pier; that he went on the platform to aid in letting down the endgate, and entered the premises to inspect the merchandise so that it would b,e packed tq. the best
 
 *505
 
 advantage, and directed the loading thereof. He said he had hauled for other companies in the same business as defendant, but he did not state how long he had been so engaged or the extent of his experience, or give adequate facts to show he had knowledge of the alleged general custom. He did testify, over objection, that the work he did in August, 1932, was the course followed by other companies. The cross-examination revealed he had little, if any, definite information respecting the scope of the duties usually performed by truck drivers and their helpers, or that there existed a well-known, uniform practice followed in loading trucks. Concededly, he had never acted as helper for Carberry and had no knowledge of the methods used by him.
 

 The referee found that the claimant “established the custom in vogue with reference to loading of merchandise under the system prevailing with the defendant company, to the effect that the driver’s helper upon arriving at the point of embarkation or loading, leaves the driver’s seat, proceeds on to the premises of the defendant at pier No. 23, takes down the endgate, inspects the prospective load, and directs the employes of the defendant in the method and manner of loading the merchandise on the truck; and in doing this work is called upon to perform a part of his duties upon the premises of the defendant. This evidence did not establish that the deceased actually did this at the time the load in question was placed upon the truck, but did establish that this was the custom which prevailed in this kind of work, presenting an inference that this was the procedure in the instant case. We, therefore, find that the defendant permitted the entry of the deceased upon its operating premises in connection with the loading of the truck.”
 

 The referee concluded that the facts in this case bring it within article III, section 302(b) of the Workmen’s Compensation Act of June 2, 1915, P. L. 736, as
 
 *506
 
 amended (77 PS §462), and accordingly awarded compensation. That section carries into effect article II, section 203 (77 PS §52), which creates a statutory employer in the following language:
 

 “An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer’s regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.”
 

 The award granted by the referee was affirmed by the board and its action was upheld by the learned court below.
 

 It will be noted that before any liability of an alleged statutory employer attaches from the occurrence of an accidental injury to an employee of a subcontractor, it must be shown that such employee has been permitted to enter upon the premises of the employer. This is a vital element to create the relationship of a statutory employer:
 
 De Nardo et ux. v. Seven Baker Bros.,
 
 102 Pa. Superior Ct. 347, 156 A. 725. In considering the evidence offered by claimant, we are not unmindful that in compensation cases rules of evidence are not applied with the same rigor as in litigation before a jury, as an unduly technical application of the rules of evidence would in many instances defeat the main purposes of the compensation act. As stated in
 
 Johnston v. PayneYost Construction Co. et al.,
 
 292 Pa. 509, 515, 141 A. 481, the courts will not, by technical reasoning, classify evidence which is on the borderline as incompetent, where competent proofs indicate the probability of the fact at issue being as stated. Notwithstanding the liberality in admitting and treating evidence in compensation cases, an award must be based on sufficient legally competent testimony:
 
 Bracken v. Bethlehem Steel Co.,
 
 
 *507
 
 115 Pa. Superior Ct. 251, 255, 175 A. 643. We find no such evidence on this record.
 

 In the case at bar, the witness, Millard J. Aurand, was clearly incompetent and his testimony insufficient to establish a universal, uniform, notorious, and well-established custom: 17 C. J. 459. Custom cannot be proven by isolated cases in which a particular practice was followed. It must be established by numerous instances or by repetition of the act in question extending over a considerable period of time, so that there is no doubt with reference to its nature and character:
 
 Adams v. Pittsburgh Ins. Co.,
 
 76 Pa. 411;
 
 Anewalt v. Hummel,
 
 109 Pa. 271;
 
 Veit v. Class & Nachod Brewing Co.,
 
 216 Pa. 29, 64 A. 871;
 
 Magyar v. Penna. R. R. Co.,
 
 294 Pa. 585, 144 A. 765;
 
 Keiter v. Miller,
 
 111 Pa. Superior Ct. 594, 170 A. 364; Henry on Trial Evidence (2d ed.), p. 160. As there was not sufficient evidence of an alleged custom or usage, a legitimate inference that the deceased went on defendant’s premises cannot rest thereon. Such a conclusion is but a conjecture. We readily concede that an inference may be based upon another inference, but there must be proven a primary fact to support the original inference:
 
 Watkins v. Prudential Ins. Co.,
 
 315 Pa. 497, 173 A. 644;
 
 Neely et at. v. Ins. Co.,
 
 322 Pa. 417, 185 A. 784. This essential factor is absent in this case.
 

 As the claimant failed to adduce direct evidence or prove basic facts to support a reasonable and legitimate inference that her husband entered upon the defendant’s premises, we are constrained to hold that the proof was too meager and indefinite to establish a statutory relationship, which was necessary to sustain this award.
 

 Judgment is reversed, and here entered for defendants.