### Judy Ellyn, Inc., Appellant, *v.* Hyde Park Fashions, Inc.

Argued September 16, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*James Scanlon, Jr.,* for appellant.

*Joseph A. Graziano,* with him *Nogi, O'Malley & Harris,* for appellee.

OPINION BY HOFFMAN, J., November 11, 1965:

Appellant, Judy Ellyn, Inc., is a New York corporation engaged in the business of selling dresses to wholesalers. Its principal place of business is New York City. Appellee, Hyde Park Fashions, Inc., is a Pennsylvania corporation engaged in the business of dressmaking. Its principal place of business is Scranton, Pennsylvania.

From May 19, 1962, to November 20, 1962, appellant delivered to appellee a quantity of dress material for processing into finished garments. The parties agreed that after the garments were completed, they would be stored at appellee's premises until request for shipment was made by appellant. On January 10,

1963, appellee notified appellant that the dresses had been damaged by water in appellee's basement.

Appellant instituted suit for damages. At trial, it attempted to prove the extent of these damages through the expert testimony of Gilbert Goldstein, who had been appellant's sales manager throughout the period in question. Appellee moved to strike Mr. Goldstein's testimony because he was not familiar with the damaged dresses. This motion was granted by the lower court. Consequently, since no other evidence was introduced at trial to prove damages, the court entered a compulsory nonsuit. Appellant's motion to remove the compulsory nonsuit was ultimately refused after a hearing before the court en banc.

After a careful reading of the record in this case, we agree with the lower court that "the testimony of the witness, Gilbert Goldstein, called by plaintiff to prove its damages, discloses his unfamiliarity with the damages sought to be proven and his incompetency, therefore, to testify thereto . . ."

Mr. Goldstein stated that the market value of the dresses in January, 1963, was $3.75 a garment. Further examination of the record reveals, however, that Mr. Goldstein knew only that these were maternity dresses. He did not know how old they were, of what material they were made, or whether they were in season. Yet, he admitted that all of these factors would affect the value of the dresses.

In answer to questions by appellee's counsel, Mr. Goldstein stated: "Q. . . . Did the price, the market value, of dresses vary from year to year? A. Well, there are some dresses, yes. Q. Some dresses sell and some do not? A. That's right. Some you would have to sell cheaper. Q. So that the figure of $3.75, I believe it was, that would be a variable figure? A. It could be. I have no way of knowing what was there at the time or how old they were. Q. You have no way of

knowing? A. Not at this time, no. Q. Sir, can you tell me how you arrived—you testified on direct examination as to a figure. Can you tell me how you arrived at that figure? A. My normal price of any garment is $3.75. This is my selling price and that is what I was asked, and that is my selling price. Q. But you have no way of knowing what the market value is of those dresses? A. If I had them today I would, yes."

He was then further questioned by the Court: "Q. You were familiar with the garments that are in question at that particular time? A. No, I am not. I have not seen them and never saw them. There was a deceased partner in the firm that was the person that went out to look at them with whoever it was, and he would know, but I am the only one left who can testify for the company at the time. Q. Then you did not see the garments? A. No, I did not. Q. You didn't know the nature of the garments? A. No. Q. Was that the only garment you sold at that particular time? A. There were a few styles involved, different styles involved. Q. Would the different styles involve a different selling price? A. Depending on the season, Your Honor. If they were summer dresses and this was the fall of the year, there might have been a difference in the selling price, and one might have called for more than the other. . . . Q. How do you say that particular garment could sell for $3.75 when you are not familiar—A. Normally my selling price is $3.75, any garment I have, unless it is out of season. Either I hold it over to the next season or sell them out. Q. Was this garment in season? A. I don't know. I didn't see them. I really don't know."

Finally, even on redirect examination, he stated: "Q. Are you familiar with the general value of maternity dresses that you sell? A. Yes, I am familiar, but it is still seasonal. My maternity dresses, we sell

them for $3.75. Q. No matter what the style or cut it is $3.75? A. Generally. Q. Generally in that area. A. That is my selling price, but there is a time out of season where we have to sell a lot cheaper. Maternity dresses happen to be the worst kind to move. When I say move I mean to get rid of. They are the toughest things because there isn't that big a market for maternity dresses."

An expert witness is not competent to testify as to value unless his opinion is based on a familiarity with the object in question. This familiarity may be derived from personal observation or from a sufficiently detailed description by another. *Patterson v. Union Transfer Co.*, 87 Pa. Superior Ct. 257 (1926) ; *Jerome v. Laurel Pipe Line Company*, 197 Pa. Superior Ct. 131, 177 A. 2d 150 (1962). Since Mr. Goldstein displayed no knowledge of the quality or character of the dresses, the trial judge did not commit error in excluding his testimony. Whether a witness is sufficiently qualified to testify as an expert is a question for the discretion of the trial judge whose ruling will not be reversed except in the case of clear error. *Jerome v. Laurel Pipe Line Company*, supra.

Appellant argues that all that can be reasonably required of it is to produce for the jury sufficient evidence of the best character attainable, since the damages were caused by appellee's wrongful conduct, citing *Commonwealth Trust Company of Pittsburgh v. Hachmeister Lind Company*, 320 Pa. 233, 181 A. 787 (1935), and *Jaffe v. Alliance Metal Company, Inc.*, 337 Pa. 449, 12 A. 2d 13 (1940).

Our Supreme Court explained in the *Hachmeister Lind* case, supra, at p. 239, however, that damages may sometimes be based on a reasonable estimate alone, because ". . . a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to com-

plain that they cannot be measured with the same exactness and precision as would otherwise be possible." (Quoting *Eastman Kodak Company of New York v. Southern Photo Materials Company,* 273 U.S. 359, 379 (1927)).

In the instant case, however, appellant is to blame for the absence of any precise description of the goods. Appellee did not destroy the dresses after they were damaged but returned them to appellant. At that time appellant had full opportunity to ascertain and record all of the details relating to the dresses so that it might establish the extent of damages. This it failed to do. Instead, it immediately proceeded to sell the dresses for salvage value. Appellant is not entitled to complain that damages may not be measured with a fair degree of accuracy when it is responsible for this situation.[1]

Since the court properly excluded Mr. Goldstein's testimony, the record was barren of any legally competent evidence to warrant submitting this case to the jury.[2] Accordingly, the entry of the compulsory nonsuit was proper.

Order affirmed.

MONTGOMERY, J., would grant a new trial.

---

[1] Apparently, one of the partners in appellant's company died, having knowledge of the nature of the garments which were damaged. The failure of appellant and its principals to maintain adequate records, however, should not relieve appellant of the duty to establish sufficient facts in the record to support an opinion of value.

[2] "The law does not require absolute certainty as to the data upon which profits are to be estimated, *but certainty to a reasonable degree or extent so that the damages may rest upon a definite basis and not wholly in speculation and conjecture.*" [Emphasis added] *Guady v. Seaman,* 188 Pa. Superior Ct. 475, 149 A. 2d 523 (1959) quoting *Wilson v. Wernwag,* 217 Pa. 82, 66 A. 242 (1907).