## Pepin v. Bethlehem Steel Corp.

*C. Daniel Higgins*, for plaintiffs.
*Jackson M. Sigmon*, for defendant.

WILLIAMS, *J.*, August 3, 1977—This matter comes before the court en banc on plaintiffs' motion for a new trial after a jury verdict in favor of defendant. Plaintiffs raise four issues in support of their motion, three of which relate to the trial court's exclusion of certain proffered testimony and the fourth which is that the verdict was against the weight of the evidence.

Timothy Pepin, a truck driver, was injured while a load of steel was being placed on his truck at defendant's plant in Bethlehem, Pa. On the day of the accident, plaintiff had driven his flatbed trailer to a loading bay in the billet yard of the Bethlehem plant of Bethlehem Steel, where he was to receive a load of steel billets. The loading procedure at the Bethlehem plant required the truck driver to stand on the flatbed of the truck in order to direct the shipper, a Bethlehem Steel employe, as to where the load of steel should be positioned on the truck bed. The shipper directed an overhead crane operator where to position the load according to the truck driver's directions. The load Pepin was to receive consisted of three bundles of bar stock, each bundle up to 30 feet in length and weighing 5,000 to 18,000 pounds. The bundles were placed on the trailer via two chain slings suspended from an overhead crane. In order to prevent the chain slings from being trapped between the bundles of steel and the bed of the trailer, wooden blocks, called

dunnage, were placed on the trailer. It was plaintiff's theory of the case that in positioning the load on the trailer the chain sling became stuck on the dunnage and that the Bethlehem Steel employes attempted to free the chain by "snapping" it out. He contended that this caused the load to shift forward causing the injuries complained of; that it was negligent for defendant to use this method to free the chain and negligent to require him to stand on the flatbed of the truck during the loading operation.

Defendant contended that its employes were merely following the truck driver's directions in an attempt to position the load and that they were not attempting to free a stuck chain. Defendant further contended that plaintiff was contributorily negligent in moving into the path of the steel being positioned on the truck. After a jury trial before Williams, J., the jury returned a verdict for defendant.

We will address the evidentiary questions first. Plaintiff, Timothy Pepin, was the only witness on plaintiffs' side of the case to testify on the issue of liability. He testified that he had been a truck driver for seven or eight years, but that he had been hauling steel for only four or five months at the time of the accident. During this four or five-month period he had been in defendant's Bethlehem plant approximately two to three times per week. After the accident he testified that he returned to his job as a steel hauler, and that as of the time of trial he had three and one-half years of experience as a steel hauler. During this three and one-half year period he stated that he had been in six different steel plants and had witnessed the freeing of chains stuck on dunnage on approximately 40 occasions. He was permitted to describe to the jury three different methods of freeing stuck chain that he had

observed and that re-hooking the chain or "blocking" the load were the most common methods, while "snapping" the chain was used in "just a few instances."

On the basis of the above testimony, Pepin offered to testify further as to the custom used in the industry to free chain, the custom in the industry regarding the requirement that the truck driver stand on the trailer during the loading operation, and the safest procedure to free chain stuck on dunnage. These attempts to testify as to ultimate conclusions in the case were refused by the trial judge. In our opinion those rulings were proper.

Plaintiffs are correct in noting that " 'the custom or practice prevailing in a particular business in the use of methods, machinery, and appliances is a most important factor in determining the question of negligence.' " Jemison v. Pfeifer, 397 Pa. 81, 86, 152 A. 2d 697 (1959). However such testimony must be offered by way of a competent witness: Jemison, supra; McCarthy v. Kroger Co., 260 F. Supp. 384 (W.D. Pa. 1966).

The appropriate test to establish the competency of a witness testifying as to the existence of a given custom was set forth in Aurand v. Universal Carloading & Distributing Co., 131 Pa. Superior Ct. 502, 200 Atl. 285 (1938). The court stated that: "Custom cannot be proven by isolated cases in which a particular practice was followed. It must be established by numerous instances or by repetition of the act in question extending over a considerable period of time, so that there is no doubt with reference to its nature and character." 131 Pa. Superior Ct. 502, at 507. To admit such evidence of the custom at other plants, it must be shown that the other plants were similarly located with similar

working conditions: Brown v. American Steel Foundries, 272 Pa. 231, 116 Atl. 546 (1922). As stated in 21 Am. Jur. 2d, Customs and Usages, §38: "In order to render the testimony of a witness to a general custom relevant and competent, it must appear that he has full knowledge and long experience on the subject about which he speaks." While it may not be necessary to establish that the trade practice was universal as defined by the common law, "evidence of the general custom of one company or a single individual or small group with respect to the act in question is usually held inadmissible because such custom may not conform to the usual or customary rule of men generally." 29 Am. Jur. 2d, Evidence, §318.

We have been cited no case in which a witness of such limited experience as Mr. Pepin possessed was found competent to testify concerning general trade customs. See Jemison v. Pfeifer, supra (witness had 21 years of experience); Muller v. Kirschbaum, 298 Pa. 560, 148 Atl. 851 (1930) (witness had 25 years of experience); George v. Morgan Construction Co. v. U.S. Steel Corp., 389 F. Supp. 253 (E.D. Pa. 1975) (witness had 37 years of experience); Frankel v. Styer, 386 F. 2d 151 (3d Cir. 1967) (witness had 35 years of experience). Further, at the time of the accident plaintiff had had only brief exposure to steel hauling practices, and there is no suggestion that he was familiar with industry-wide practices. As the critical test is the prevailing custom in the industry at the time of the accident: Kuisis v. Baldwin-Lima-Hamilton Corp., 457 Pa. 321, 319 A. 2d 914 (1974); this becomes an additional factor mitigating against the allowance of Mr. Pepin's testimony on this issue. Therefore, we cannot say that plaintiff had "full knowledge

and long experience" in the field. He lacked a basis on which to testify that the practices he had observed extended "over a considerable period of time" throughout the industry. Additionally, the fact that in 40 observations only a "few" used the "snap out" method would not seem to establish a general custom, nor would the fact that in five of six steel plants visited the truck driver was not required to stand on the trailer during a loading operation establish a general custom. Accordingly, we find no abuse of discretion in the trial court's decision to preclude Mr. Pepin from testifying as to the established custom utilized in the trade.

Plaintiff also offered himself as an expert witness on the issue of the safest method in which to free chains stuck on dunnage. The qualification of an expert witness is within the trial court's discretion, and a review of that discretion is limited: Laubach v. Haigh, 433 Pa. 487, 252 A. 2d 682 (1969); Judy Ellyn, Inc. v. Hyde Park Fashions, Inc., 206 Pa. Superior Ct. 569, 214 A. 2d 296 (1965). "The standard of qualification is a liberal one: 'If a witness "has any reasonable pretension to a specialized knowledge on the subject under investigation he may testify, and the weight to be given his testimony is for the jury." ' " Kuisis v. Baldwin-Lima-Hamilton Corp., supra., at p. 338.

Mr. Pepin is not, nor has he ever been, a crane operator or steel shipper. There was no showing that he had ever studied or had taken any courses in safety engineering or mechanics as might acquaint him with the safest procedure to free a chain stuck between a heavy load of steel and wooden dunnage. The only basis for his purported expertise was his limited observation of methods used to free a stuck

chain on some 40 occasions and various conversations with loaders and shippers. He had no independent basis of knowledge to be able to judge whether the methods he observed were the safest methods which could be employed. He could only testify that these were the methods utilized. As noted, he was permitted to testify as to what he observed. Consequently, he was in no better position than any one of the jurors to judge which method would be the safest. To have allowed him to express his opinion as to the best method would have usurped the function of the jury: Taylor v. Fardink, 231 Pa. Superior Ct. 259, 331 A. 2d 797 (1974). We find no abuse of discretion in prohibiting plaintiff from expressing an opinion as to the safest procedure to use in this operation.

At the close of defendant's case, plaintiffs offered the testimony of Harold Martz as an expert rebuttal witness. Mr. Martz had been offered as an expert witness in plaintiffs' case in chief, but as plaintiffs had not complied with Northampton County Rule of Civil Procedure 212.1(F)(4), requiring notice at pre-trial of all witnesses who will testify at trial, Mr. Martz was not permitted to testify. Plaintiffs have not challenged this rule. Plaintiffs are challenging the refusal to allow Martz to testify on rebuttal.

Joseph Janotka, a Bethlehem Steel employe, was the crane operator handling the loading of plaintiff's truck on the day of the accident. As he was involved in the incident, he was called as a defense witness. On direct examination he testified that he had seen that a chain had become stuck on the dunnage during the loading of Mr. Pepin's truck. However, he indicated that the load was moved in order to reposition the load, and not in an attempt to

free the chain. He was not called as an expert witness and no question was asked of him as to whether the procedure used was proper or safe. On cross-examination, however, Janotka was asked whether the method used was safe and he responded that it would have been just as safe to use a single chain as it was to use both chains to move the load. It is this statement which plaintiffs sought to rebut by the testimony of Harold Martz.

The admissibility of rebuttal testimony is within the discretion of the trial judge: Downey v. Weston, 451 Pa. 259, 301 A. 2d 635 (1973); Freeman v. Terzya, 229 Pa. Superior Ct. 254, 323 A. 2d 186 (1974). While certain rebuttal testimony may be admissible as a matter of right: Flowers v. Green, 420 Pa. 481, 218 A. 2d 219 (1966), we are not convinced that this was such a case and we find no abuse of discretion.

We support the trial judge's decision based on two factors. The first is that Harold Martz apparently was not qualified to testify as an expert witness. Plaintiffs' offer indicated that Martz was experienced in the operation of construction cranes and their use in the loading of steel onto trucks at construction sites. The similarity of this operation to the operation of a movable crane on overhead trolley tracks inside a steel plant is not clearly evident. What is safe in one situation may not be safe in the other. Were this the only basis for the trial court's decision, however, we would be faced with a more difficult question since Martz's failure to testify precludes us from finding that the operation of these different cranes was a significant difference.

The second factor is convincing, however. Until the time of plaintiffs' cross-examination of

Janotka, there was no statement for which plaintiffs' witness could have been called to rebut. On cross, however, plaintiffs elicited Janotka's opinion that the method used was safe. Janotka had not been qualified to render such an opinion and on proper objection this opinion could have been stricken. No objection was made by defendant, though, as the opinion supported defendant's version of the facts. To then allow plaintiffs to use this testimony as a basis to introduce an expert rebuttal witness would be unfair. This is especially so in light of the fact that this same witness was offered in chief, but was properly precluded. To allow him to testify on rebuttal would make a mockery of our pre-trial rules. As this testimony should have properly been introduced in chief, the trial court's decision to exclude his testimony will not be reversed: Murphy v. Philadelphia, 420 Pa. 490, 218 A. 2d 323 (1966); Downey v. Weston, supra. Had defendant presented Mr. Janotka as an expert witness or had Martz's exclusion from testifying in chief been improper, Mr. Martz's testimony in rebuttal would have been proper: Dutton v. Philadelphia, Baltimore & Washington R.R. Co., 32 Pa. Superior Ct. 630 (1907). This was not the case.

Plaintiffs' final contention is that the verdict was against the weight of the evidence. Plaintiff's brief presents a plausible interpretation of the facts from which the jury could have imposed liability on defendant. The jury did not do so, however. In support of the jury's verdict there was evidence, which the jury could have credited, that Mr. Pepin directed the shipper to have the crane operator shift the load rather than attempt to free the chain and that Mr. Pepin stepped into the path of the moving steel,

away from a position of safety where he had been directed to stand. The function of the jury is to resolve contradictory facts: General Electric Credit Corp. v. Aetna Casualty & Surety Co., 437 Pa. 463, 480, 263 A. 2d 448 (1970); and merely because a jury could have drawn different inferences or conclusions is not sufficient grounds to grant a new trial: Schwegel v. Goldberg, 209 Pa. Superior Ct. 280, 228 A. 2d 405 (1967).

In accordance with the above, we enter the following

### ORDER OF THE COURT EN BANC

And now, August 3, 1977, plaintiffs' motion for a new trial is denied and dismissed.