399 A.2d 783

Jaclyn EARLIN

v.

Howard CRAVETZ, M.D., Appellant.

Superior Court of Pennsylvania.

Argued Dec. 4, 1978.

Decided March 16, 1979.

John J. O'Brien, Jr., Philadelphia, for appellant.

Martin Heller, Philadelphia, for appellee.

Before CERCONE, HESTER and HOFFMAN, JJ.

HESTER, Judge:

This is an appeal from the Order of the Court of Common Pleas of Philadelphia County denying appellant's motion for judgment N.O.V. or in the alternative, a new trial.

Appellee instituted this action in trespass on May 25, 1971 against appellant (a medical doctor). The complaint alleged negligence in the treatment of appellee's left shoulder. The case proceeded to trial before a jury on May 26, 1977 and on June 1, 1977 a verdict was returned in favor of appellee in the amount of $25,000.00.

Testimony and exhibits at trial produced the following factual situation:

Appellee suffered from chronic pain in her left shoulder and on the left side of her back. She was successfully treated for that problem in 1968 by a Dr. Singer, who prescribed the drug "butozoladen" (taken orally).

On May 1, 1971, appellee was experiencing the same type pains as above and called Dr. Singer. However, he was out of town and appellee was referred to appellant.

After being contacted by appellee, via telephone, appellant refused to refill a prescription for "butozoladen" over the phone and advised her to come to his office.

After examining appellee, appellant determined that the more advisable method of treatment would be to inject pain-relieving drugs directly into the affected area. Appellee was reluctant to receive an injection, but finally consented to the treatment. Thereupon appellant proceeded to inject 10 c.c.'s of a solution of "hydrocortisone, xzlocaine and pontocaine" into the shoulder area of appellee's back.

The above treatment, however, provided no relief for appellee. Immediately following the injection, she complained of severe chest pains. Appellant advised her to sit down in his office for a few minutes, as she was probably just upset about the injections. However, after sitting

down for a while appellee still felt no better, whereupon appellant sent her home to rest and prescribed "valium" to calm her down.

Appellee went to sleep at home, however, when she awoke, she could hardly move and that afternoon was admitted to Germantown Hospital. There it was discovered she was suffering from a "pneumothorax"[1] or a collapsed lung.

Appellant contends on this appeal that certain opinion testimony by the appellee's expert witness, Dr. Herring, was improperly admitted at trial and was improperly submitted to the jury for their consideration.

We consider the two issues presented by appellant as one, since a finding that the "opinion testimony" was improperly admitted, naturally would dictate that we find the testimony was improperly submitted to the jury for consideration.

Appellant's complaint is that Dr. Herring based his expert opinion on facts not already established, that in fact, he supplied the facts necessary to support his opinion.

Opinion testimony must be based on either the experts own knowledge of the facts or upon testimony by other witnesses. *Hussey v. May Department Stores, Inc.*, 238 Pa.Super. 431, 357 A.2d 635 (1976); *Judy Ellyn, Inc. v. Hyde Park Fashions, Inc.*, 206 Pa.Super. 569, 214 A.2d 296 (1965); *Tobash v. Jones*, 419 Pa. 205, 213 A.2d 588 (1965).

The liability question to be determined at trial was basically whether appellant's action in injecting certain drugs into appellee's shoulder had caused her subsequent "collapsed lung".

In the opinion of Dr. Herring (appellee's expert) the needle used by appellant in injecting the painkillers into

1. *Pneumothorax* means technically "air in the chest". Medically it is a term used to describe a condition when the lung collapses because air is present in the cavity outside the lung. The lungs are encased in an envelope-like sac, called the pleural cavity, which is a vacuum. It is necessary to maintain this vacuum to sustain the mechanics of respiration. Anything which breaks the "seal" will cause the lung to collapse. If it is blood, the condition is called hemothorax; if it is water, its called hydrothorax. In our case, its air—thus pneumothorax.

appellee's shoulder had pierced the pleural cavity, thereby permitting air to enter said cavity, thus collapsing the lung.

Appellant, does not contest the fact that if indeed a needle had pierced the pleural cavity, this would be the result. His contention is that the only testimony presented indicated that the appellant in administering the drugs, had used a 25 gauge syringe, which all agreed, was not capable of causing the damage complained of; it was only ⅝" long, not long enough to penetrate that far into the body.

Dr. Herring, however, testified on redirect (R. 260a–265a) that in his opinion appellant had not used a 25 gauge syringe because the solution of hydrocortisone, xzlocaine and pontocaine would not flow through a 25 gauge needle, thus a syringe with a gauge on the order of "19", "20", or "21" would have had to be used, in which case those gauge needles could have easily penetrated the body far enough to have caused the "pneumothorax".

Appellant contends that this was a case of an expert judging the credibility of a witness, thus usurping the function of the jury. He (Dr. Herring) was in effect basing his expert opinion (that appellant's conduct had caused appellee's injuries) on a fact which he himself provided.

This seems to have a ring of logic to it, however, in the context of the rest of the testimony and exhibits, we find it lacks validity.

> ". . . It is the function of opinion evidence to assist the jury in arriving at a correct conclusion upon a given state of facts. To endow opinion evidence with probative value, it must be based on facts proven or assumed, sufficient to enable the expert to form an intelligent opinion. This opinion must be an intelligent and reasonable conclusion, based on a given state of facts and be such as reason and experience have shown to be a probable resulting consequence of the facts proved."

*Collins v. Hand*, 431 Pa. 378, 246 A.2d 398, 404 (1968).

The problem for appellant was the fact that he did not record the size of the needle he used to inject the medication

into appellee. In addition, he was uncertain as to the number of injections he administered. His recall was more a recitation of what he "thought" he probably would have done if presented with the same patient, suffering from the same condition, as appellee. Also, other evidence at trial tended to narrow the focus to appellant as the only "cause" of the "pneumothorax". The doctor who treated appellee when she was first admitted to the hospital (after receiving appellant's injections) noted on his report that the patient was suffering from a pneumothorax and his conclusion was that it was "iatrogenic" (i.e. caused by a doctor). Also, testimony by appellant's own expert (Dr. Makous) tended to eliminate all the known causes of "spontaneous pneumothorax" (lung collapse without any visible trauma to the body).

We are of the opinion that the above factors, particularly appellant's inability to remember with certainty what size needle he used or to produce any documentation as to what was used, made the issue of causation, i.e. did the needle penetrate appellee's pleural cavity, one to be decided by medical opinion testimony.

We, therefore, think it was entirely proper for appellant's expert to state as part of his expert opinion that he believed a longer needle had been used. *Something* had caused appellee's injury. There were no apparent natural causes. Appellant's misfeasance was a very possible and logical explanation. His inability to document or to testify with any degree of certainty as to his actions, left the issue wide open for medical testimony as to what size needle was medically proper under the circumstances. Rather than engaging in "speculation" as appellant alleges, we think his testimony was precisely of the kind that juries require in order to reach verdicts in malpractice actions such as this case.

Affirmed.

CERCONE, President Judge, and HOFFMAN, J., concur in the result.