J-A27024-16

2017 PA Super 356

| | | |
|---|---|---|
| IN RE: RISPERDAL LITIGATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| W.C. | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2451 EDA 2015 |
| | : | |
| JANSSEN PHARMACEUTICALS, INC., | : | |
| JOHNSON & JOHNSON COMPANY, | : | |
| JANSSEN RESEARCH AND | | |
| DEVELOPMENT, LLC | | |

Appeal from the Judgment Entered June 30, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  March Term, 2013, No. 01803,
March Term, 2013, No. 01803

BEFORE:   PANELLA, J., RANSOM, J., and FITZGERALD*, J.

OPINION BY PANELLA, J.                    **FILED NOVEMBER 13, 2017**

Appellant, W.C., appeals from the judgment entered following a jury

trial in the Philadelphia County Court of Common Pleas in favor of Appellees,

Janssen Pharmaceuticals, Inc., Johnson & Johnson Company and Janssen

Research and Development, LLC.[1] Appellant argues the trial court abused its

_____

* Former Justice specially assigned to the Superior Court.

[1] The caption in the notice of appeal listed M.C., Appellant's mother, as an
Appellant and Excerpta Medica, Incorporated, and Elsevier, Inc. as
Appellees. **See** Notice of Appeal, 7/29/15. However, W.C., Janssen
Pharmaceuticals, Inc., Johnson & Johnson Company and Janssen Research
and Development, LLC, appear to be the only parties to the instant appeal.
*(Footnote Continued Next Page)*

discretion in denying his request for a new trial due to erroneous evidentiary rulings at trial. We reverse and remand for a new trial limited to the issues of causation and damages.

Appellees developed and manufactured risperidone, an atypical antipsychotic, for the treatment of schizophrenia in adult patients. In 1993, the Food and Drug Administration granted approval to Appellees to market risperidone for this purpose. Appellees brought their product to market under the brand name Risperdal.

In February 2002, at the age of six, Appellant was prescribed Risperdal for the treatment of attention deficit disorder, attention deficit hyperactive disorder, and oppositional defiant disorder.[2] He remained on Risperdal, periodically, until March 2007. At that point Appellant's physician discontinued Appellant's use of the medication. At some time between 2006 and 2008, when Appellant was ten to twelve years old, Appellant's mother, M.C. ("Mrs. C"), alleged she observed Appellant suffering from unexplained

---

*(Footnote Continued)*

*See* Appellant's Brief; Appellee's Brief; Stipulation to Discontinue, 4/16/15. We have corrected the caption accordingly.

[2] *See* U.S. Food & Drug Administration, *Understanding Unapproved Use of Approved Drugs "Off Label,"* available at https://www.fda.gov/forpatients/other/offlabel/default.htm (last visited August 24, 2017).

weight gain and gynecomastia.[3] However, at that time, neither Appellant nor Mrs. C informed Appellant's medical providers of his condition.

On March 14, 2013, Appellant commenced this action by filing a complaint. Appellant's complaint was filed as part of the ***In re Risperdal***® mass tort program, and incorporated allegations found in the master complaint.[4] Appellant alleged his Risperdal usage caused his gynecomastia, and raised claims against Appellees of (I) negligence; (II) negligent design defect; (III) fraud; (IV) strict liability failure to warn; (V) strict liability design defect; (VI) breach of express warranty; (VII) breach of implied warranty; (VIII) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201, *et. seq.*; (IX) unfair and deceptive trade practices; (X) conspiracy; and (XI) punitive damages. Mrs. C asserted claims for medical expenses incurred by a parent and loss of consortium. Appellees denied all of Appellant's and Mrs. C's allegations.

Appellees later filed a motion for partial summary judgment on the master docket disputing the validity of the punitive damages claim. The trial

---

[3] Merriam-Webster's online dictionary defines gynecomastia as "excessive development of the breast in the male." Available at http://merriam-webster.com/dictionary/gynecomastia (last visited August 23, 2017).

[4] The ***In re Risperdal*** mass tort program was formed on May 26, 2010, as a repository for the filings of pleadings, motions, orders, and other documents common to all Risperdal cases in the Philadelphia County Court of Common Pleas. ***See*** Case Management Order 1, 5/26/10, ***In Re Risperdal***® ***Litigation***, March Term 2010 No. 296.

court granted Appellees' motion and dismissed all plaintiffs' claims for punitive damages. The trial court then denied reconsideration.

Appellees filed a motion for summary judgment as to each count of Appellant's and Mrs. C's complaint. Appellant and Mrs. C responded, asserting that their claims were legally and factually sound, and therefore not subject to dismissal on summary judgment. The trial court granted Appellees' motion in part, dismissing all claims against Appellees with the exception of Appellant's negligence claim.

Appellant's jury trial for his remaining negligence claim began on February 20, 2015. Appellant offered the testimony of eleven witnesses and introduced approximately 200 exhibits in support of his contention that he developed gynecomastia as a result of Appellees' failure to notify physicians, health care providers, and the FDA of the significant risk of gynecomastia associated with the use of Risperdal in pre-pubescent males.

Pertinent to the instant appeal, Appellant offered the expert testimony of Mark Solomon, M.D. He opined Appellant suffered from gynecomastia and developed gynecomastia solely due to Risperdal ingestion during childhood. *See* N.T., Trial, 3/3/15, Morning Session, at 37-38, 58. At the request of Appellant's counsel, Dr. Solomon performed a physical examination of Appellant's chest in front of the jury to demonstrate how he determined Appellant was suffering from gynecomastia rather than chest enlargement due to obesity. *See id*., at 39-35. During this examination, Appellant's counsel asked Dr. Solomon to analogize the amount of breast tissue

Appellant had to either a softball or tennis ball. *See id*., at 43. Dr. Solomon concluded that Appellant was suffering from the presence of breast tissue approximately the size of a tennis ball. *See id*., at 44. On cross-examination, Dr. Solomon was asked numerous questions about Appellant's visit to the emergency room in March 2013 for chest pain. Dr. Solomon opined that a chest examination performed in the emergency department for chest pain would not necessarily have led to the discovery of Appellant's gynecomastia. *See id*., at 105-113.

Through the introduction of seven witnesses and over eighty exhibits, Appellees contested every aspect of Appellant's negligence claim. Appellees denied that Risperdal usage correlated to a significant risk of gynecomastia. They further disputed that they had negligently failed to inform physicians, health care providers, and the FDA of this significant risk. Further, and relevant to the instant appeal, Appellees heavily contested Appellant's claim that he developed gynecomastia as a result of Risperdal usage. Rather, Appellees argued Appellant never suffered from gynecomastia, and that any chest enlargement was a result of weight gain.

In support of this contention, Appellees presented the videotaped deposition of Michelle Baker, a physician's assistant who treated Appellant from 2005 until 2013. *See* N.T., Trial, 2/25/15, Morning Session, at 20 (playing deposition tape from 7/28/14); Def. Ex. 19, Baker Deposition, 7/28/14, at 21:8-101:21. Ms. Baker opined Appellant's breast enlargement was caused by his rapid weight gain, rather than his Risperdal usage. *See*

*id*., at 101:5-101:21. Additionally, Appellees presented the expert testimony of Dr. Adelaide S. Robb and Dr. Mark Moltich. ***See*** N.T., Trial, 3/9/15, Morning Session, at 15-112; N.T., Trial, 3/9/15, Afternoon Session, at 5-72; N.T., Trial, 3/10/15, Morning Session, 15-149; N.T., Trial, 3/10/15, Afternoon Session, at 5-43. Dr. Moltich testified that he did not believe that Risperdal usage could have caused gynecomastia in Appellant. ***See*** N.T., Trial, 3/10/15, Morning Session, at 86. Further, both doctors testified that they would expect a chest examination of a male to reveal the existence of breast tissue the size of a tennis ball. ***See*** N.T., Trial, 3/9/15, Morning Session, at 54-55; N.T., Trial, 3/10/15, Morning Session, at 66.

Following the close of Appellees' case, Appellees informed the trial court they were planning to display two tennis balls and a Power Point presentation during their closing argument. Appellant objected to the use of both visual aids. However, the trial court found that both the tennis balls and Power Point presentation were proper visual aids and allowed both to be displayed during closing arguments.

The jury returned with a verdict in favor of Appellees. While the jury found Appellees negligent for failing to provide an adequate warning to Appellant's prescribing physicians concerning the risk of gynecomastia associated with Risperdal use, they failed to find that Appellees' negligence caused Appellant's gynecomastia.

Appellant and Mrs. C filed post-trial motions requesting a new trial, in which they challenged the grant of partial summary judgment. Appellant

also contested the evidentiary rulings during the jury trial. The court denied the post-trial motions. This timely appeal follows.

On appeal, Appellant presents the following issues[5] for our review, which we have reordered for ease of disposition:

1. … [D]id the trial court abuse its discretion by permitting [Appellees'] counsel to display two tennis balls during his closing?

2. Did the trial court abuse its discretion by permitting [Appellees] to use in closing a 75 slide pre-prepared Power Point presentation: (a) that was not introduced into evidence during [Appellees'] case-in-chief; (b) that was not properly authenticated as a fair and adequate representation of that which it purported to represent (i.e., the evidence at trial); (c) that was not properly founded upon the evidence of record; and (d) whose effect was highly prejudicial to [Appellant]?

3. Did the trial court abuse its discretion by admitting into evidence testimony from [Appellees'] causation experts Drs. Robb and Molitch, in which they opined without a factual basis and beyond the fair scope of their expert reports that [Appellant's] gynecomastia was not caused by Risperdal

---

[5] In their post-trial motions, Appellant and Mrs. C raised claims of error related to the trial court's decision to dismiss all of Mrs. C's claims and 10 of Appellant's claims on summary judgment, as well as additional alleged errors at trial, *i.e.*, permitting Appellees to use a Power Point in opening statements, permitting Appellees' counsel to violate its time limitation during closing statements, and permitting Appellees' counsel to argue that Appellant fraudulently brought claims during closing statements. **See** Post-Trial Motion, 5/20/15, at ¶¶ 17-28, 33, 35, 37, 41-42. However, Appellant appears to have abandoned these claims by failing to provide any discussion or citation to authority in his appellate brief. Further, Mrs. C appears to have dropped her appeal entirely as she does not challenge the trial court's decision to dismiss both of her claims. Thus, we will not consider these issues.

because otherwise a physical examination of [Appellant] in March 2013 would have revealed breasts the size of "tennis balls," and the examination did not reveal "tennis ball"-sized breasts?

4. Michelle Baker was a physician's assistant who was offered at trial only to present fact testimony about her treatment of [Appellant]. Did the trial court abuse its discretion by admitting into evidence the deposition testimony of Ms. Baker designated by [Appellees], in which she offered an expert opinion that weight gain was the cause of [Appellant's] gynecomastia?

Appellant's Brief, at 5 (suggested answers omitted). Based upon these alleged errors, Appellant contends that a new trial is warranted.

Our standard of review is as follows:

We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. We must review the court's alleged mistake and determine whether the court erred, and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

**Paliometros v. Loyola**, 932 A.2d 128, 132 (Pa. Super. 2007) (internal citations and quotation marks omitted). **See also Knowles v. Levan**, 15 A.3d 504, 507 (Pa. Super. 2011).

In his first two arguments, Appellant contends the trial court abused its discretion by permitting Appellees' counsel to utilize improper visual aids during closing arguments. Appellant raises several different arguments

based upon the trial court's decision to allow Appellees' counsel to present two tennis balls and a Power Point presentation to the jury during their summation. ***See*** Appellant's Brief, at 47-55. Appellant maintains the use of these items was inappropriate because neither the tennis balls nor the Power Point presentation was entered into evidence during Appellees' case-in chief. ***See id***., at 47, 51. Further, as the Power Point presentation was not entered into evidence during the trial, Appellant argues the trial court failed to recognize that the individual slides were never authenticated. ***See id***., at 51-52. Appellant thus asserts that individual slides of the Power Point presentation were misleading and unreliable. ***See id***., at 52- 55.

Our Supreme Court has held that during opening and closing statements,

> so long as no liberties are taken with the evidence, a lawyer is free to draw such inferences as he wishes from the testimony and to present his case in the light most suited to advance his cause and win a verdict in the jury box. However, this latitude does not include discussion of facts not in evidence which are prejudicial to the opposing party. In general, any prejudicial remarks made by counsel during argument can be handled within the broad powers and discretion of the trial judge and his actions will not be disturbed on appeal unless there is an obvious abuse of discretion.

***Hyrcza v. W. Penn Allegheny Health Sys., Inc***., 978 A.2d 961, 977 (Pa. Super. 2009) (internal citations, brackets, and quotation marks omitted).

In appropriate cases, counsel is permitted to use visual aids during opening and closing statements to assist the jury in understanding the evidence. ***See Commonwealth v. Rickbaugh***, 706 A.2d 826, 837 (Pa.

Super. 1997); ***Commonwealth v. Pelzer***, 612 A.2d 407, 412 (Pa. 1992). An item may be used as a visual aid, even if not admitted into evidence, as long as the trial court concludes that it accurately reflects the testimony elicited as evidence during trial. ***See Commonwealth v. Twilley***, 612 A.2d 1056, 1060 (Pa. Super. 1992) (citations omitted). Ultimately, permission to use visual aids during closing arguments "is within the sound discretion of the trial judge." ***Pelzer***, 612 A.2d at 412.

Here, the trial court determined it was appropriate to allow Appellees' counsel to use both the tennis balls and Power Point presentation as visual aids during closing arguments because both items accurately reflected the trial testimony. ***See*** Trial Court Opinion, 6/30/15, at 11, 13. We agree. Appellant's own expert witness, Dr. Solomon, testified Appellant's gynecomastia, caused by Risperdal usage, led to breast tissue the size of a tennis ball. ***See*** N.T., Trial, 3/3/15, Morning Session, at 44. Further, our review of the Power Point presentation reveals that the content of each of the 75 slides accurately reflects the testimony elicited during the trial. Contrary to Appellant's claims, Appellees' counsel did not argue facts that were not in evidence—the slides were merely another iteration of the same proof that was presented orally.

Additionally, as pointed out by Appellant in his first argument, the Power Point presentation itself is *not evidence*; it was merely a *visual aid*, used by Appellees' counsel to assist the jury sort through the glut of

testimony elicited during a month-long trial. Authentication of each slide was not required. **See** Pa.R.E. 901(a). **See also** Hon. Daniel J. Anders, *Ohlbaum on the Pennsylvania Rules of Evidence*, § 901.05 (2016 ed.) As both the tennis balls and Power Point presentation accurately reflected the evidence adduced at trial, it was within the discretion of the trial court to allow the display of both. We see no reason to disturb that discretion here.

Finally, Appellant contends that even if the Power Point presentation was properly utilized during the closing argument, the trial court erred by denying his request to review Appellees' Power Point presentation the day before closing arguments. **See** Appellant's Brief, at 51. Appellant asserts that this ruling deprived him of the chance to prepare an effective rebuttal, and thus, denied him a fair trial. **See id**. However, Appellant can point to no rule requiring opposing counsel reveal materials from closing argument prior to trial. Moreover, as discussed at length above, the Power Point presentation was nothing more than a visual summation of the evidence adduced at trial. Appellant should have been prepared to dispute all evidence, favorable or unfavorable, presented during trial. Thus, this argument merits no relief.

In his final two issues on appeal, Appellant challenges the trial court's evidentiary rulings.

> When we review a ruling on the admission or exclusion of evidence, including the testimony of an expert witness, our standard is well-established and very narrow. These matters are within the sound discretion of the trial court, and we may

reverse only upon a showing of abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Freed v. Geisinger Medical Center*, 910 A.2d 68, 72 (Pa. Super. 2006) (internal citations, brackets, and quotation marks omitted).

Appellant contends the trial court erred by permitting Dr. Robb and Dr. Moltich, to testify that any chest examination of Appellant after he claimed to have developed breasts would have revealed tennis ball-sized breasts. *See* Appellant's Brief, at 5, 39-47. In support of his contention of trial court error, Appellant offers two arguments. First, Appellant claims Dr. Robb and Dr. Moltich offered their opinion without the proper factual basis for their testimony. *See id*., at 42-44. Second, Appellant alleges this testimony should have been excluded as improperly exceeding the fair scope of Dr. Robb's and Dr. Moltich's pretrial expert reports. *See id*.

Turning to the first argument, "expert testimony is incompetent if it lacks an adequate basis in fact." *Helpin v. Trustees of the University of Pennsylvania*, 969 A.2d 601, 617 (Pa. Super. 2009) (citation omitted). This means that an expert's testimony must be "based on more than mere personal belief," and "must be supported by reference to facts, testimony or empirical data." *Snizavich v. Rohm & Haas, Co*., 83 A.3d 191, 195 (Pa. Super. 2013) (citations omitted). While the facts supporting an expert

- 12 -

opinion elicited at trial may be facts reasonably relied upon by experts in his particular field, an expert may also base his opinion on "[t]he facts or data in the case … that the expert has been made aware of or personally observed." Pa.R.E. 703. In order to ensure that an expert's opinion is properly supported, an expert must "state the facts or data on which the opinion is based." Pa.R.E. 705. Examining counsel may ask the expert to assume the truth of testimony the expert has heard or read, or pose a hypothetical question to the expert. ***See id***., *Comment*.

This argument rests upon Appellant's contention the record did not include sufficient evidence of the procedure surrounding his emergency room visit and chest examination for Appellees' experts to offer testimony "as to whether, as a factual matter, [Appellant] ha[d] breasts in March 2013." Appellant's Brief, at 41-42. However, our review of the record reveals that Appellant misconstrues both the nature of the opinions offered by Dr. Robb and Dr. Moltich as well as the factual basis underlying their opinions.

The testimony Appellant challenges was elicited through hypothetical questions posed by defense counsel as follows:

> [Defense Counsel]: Doctor, it has been suggested to the jury that [Appellant] had two tennis balls for breasts. Doctor, if you were performing a physical examination of a child, and let's say that they had their shirt on or even a sweater, can you conceive of you not noticing two tennis balls on this young boy's chest?
>
> [Appellant's Counsel]: Objection for about six reasons.
>
> The court: Overruled.

[Dr. Robb]: That would be impossible to miss, if they were the size of tennis balls, even with a sweatshirt on. And if I were examining the chest – when you think about it, all of you have had a physical examination and had the doctor listen to your heart, it's on the left side of your chest. It would be impossible to miss a tennis ball as you're listening to the four areas of the heart where you would listen on the left side of your chest.

N.T., Trial, 3/9/15, Morning Session, at 54-55.

[Defense Counsel]: Doctor, are you familiar with Dr. Solomon's testimony about [Appellant's] breast tissue?

[Dr. Moltich]: I am.

[Defense Counsel]: And, as an endocrinologist, would you expect that if a patient has tennis-ball sized breast tissue, it's something that would be noticed and recorded by the examiner?

[Dr. Moltich]: Oh, I certainly would.

N.T., Trial, 3/10/15, Morning Session, at 66.

Despite Appellant's contention, neither of these expert opinions can be reasonably construed as factual testimony that Appellant did not have breasts as a result of gynecomastia when he was admitted to the emergency department in March 2013. Both doctors gave expert opinions based upon hypothetical situations posed to them by Appellees' counsel. Further, these hypothetical questions were based upon facts of record. Appellant's expert, Dr. Solomon, testified that Appellant had breasts the size of "tennis balls" and that a typical chest examination, such as the one performed on Appellant in the emergency department in March 2013, would likely miss the existence of these growths. Thus, we find this argument unavailing.

Next, Appellant asserts the trial court should have excluded Dr. Robb's and Dr. Moltich's opinion testimony as exceeding the scope of their expert reports. **See** Appellant's Brief, at 43-44. Specifically, Appellant claims both expert reports were limited to opinions concerning the validity of Appellant's claim of Risperdal-induced gynecomastia. Thus, he argues any testimony regarding the ability to discover breast tissue during a chest examination exceeded the permissible scope. **See id**.

> Pennsylvania Rules of Civil Procedure require that an expert's testimony at trial be limited to the *fair scope* of his deposition testimony or pretrial report:
>
>> To the extent that the facts known or opinion held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, the direct testimony of the expert at the trial may not be inconsistent with or go beyond the *fair scope* of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto ….
>
> Pa.R.C.P. 4003.5(c) (emphasis supplied).
>
> . . .
>
>> [I]n deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether, under the circumstances of the case, the discrepancy between the expert's pre-trial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

***Bainhauer v. Lehigh Valley Hospital***, 834 A.2d 1146, 1150-1151 (Pa. Super. 2003) (citations and some emphasis omitted; brackets in original).

However, in situations where a plaintiff introduces certain evidence in his case in chief, he cannot later bar the opposition from disputing it. ***See Leaphart v. Whiting Corp***., 564 A.2d 165, 171 (Pa. Super. 1989). "Thus, an expert's opinion offered in response to other testimony presented at trial need not be addressed in the expert's report." ***Daddona v. Thind***, 891 A.2d 786, 806 (Pa. Cmwlth. 2006) (citing ***Earlin v. Cravetz***, 399 A.2d 783 (Pa. Super. 1979)) (additional citation omitted).

Here, while neither Dr. Robb nor Dr. Moltich opined about the ability of a medical provider to detect breast tissue in their expert reports, both of the contested opinions were offered directly in response to Dr. Solomon's expert testimony that a typical chest examination would miss the existence of tennis ball-sized breasts. Thus, it did not need to be in their expert reports in order to be properly admitted. We have already determined that both Dr. Robb and Dr. Moltich's testimony amounted to properly supported expert testimony. As such, Appellant's third issue on appeal merits no relief.

In his final issue on appeal, Appellant contests the trial court's decision to allow Michelle Baker, a physician's assistant who treated Appellant from 2005 until 2013, to testify as to the cause of Appellant's gynecomastia. ***See*** Appellant's Brief, at 32-40. Appellant contends Baker's testimony constituted improper expert testimony, as Baker was not qualified as an expert witness

or designated as one pursuant to Pennsylvania Rule of Civil Procedure 4003.5, prior to trial. *See id*. Conversely, both the trial court and Appellees assert Baker's testimony did not cross over into expert testimony, and as such, it was properly admitted as lay testimony of a fact witness. *See* Trial Court Opinion, at 6-8; Appellees' Brief, at 14.

Pennsylvania Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (a) rationally based on a witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Rule 702 mandates that

> [i]f scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702.

Further, it is generally accepted that "[t]he cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion…. [Without experts] we feel that the jury could have no basis other than conjecture, surmise or speculation upon which to consider causation." *Toogood v. Owen J. Rogal*, *D.D.S., P.C.*, 824 A.2d 1140, 1149 (Pa. 2003) (citations omitted; brackets and ellipses in original).

Here, Appellees do not dispute that they did not designate Baker as an expert or disclose any expert reports prior to trial. *See* Appellees' Brief, at 19. However, Appellees contend Baker's testimony constituted permissible lay opinion testimony as it was rationally based on her perception of Appellant during treatment. *See id*., at 14. If Baker's testimony only revealed this information, it would have been permissible lay witness testimony.

However, during the taped deposition, Appellees elicited the following response from Baker:

[Appellees' Counsel]: And all of those weights we just reviewed were after Risperdal use had discontinued, correct?

[Baker]: Yes, correct.

[Appellees' counsel]: [Baker], do you plan to offer any opinion as to – if indeed [Appellant] has chest growth, *do you plan to offer any opinion as to the cause of that chest growth*?

[Baker]: *The extreme weight gain, I would say*.

[Appellees' counsel]: *And what is the basis for that opinion*?

[Baker]: *Because he hasn't been on Risperdal since, we said, '07, so if he was taken off the Risperdal, the prolactin[6] would have returned to normal*.

[Appellant's counsel]: I'm going to enter an objection to this whole series of questions and answers.

_____

[6] "Prolactin … is a protein that is best known for its role in enabling mammals, usually females, to produce milk." Prolactin. Wikipedia, available at https://en.wikipedia.org/wiki/Prolactin (last visited September 28, 2017).

> She's not an expert. She's not going to offer any opinions. She's not called as an expert. She's a fact witness.
>
> And you really shouldn't be asking her any opinion questions.

N.T., Trial, 2/25/15, Morning Session, at 20 (playing Baker Deposition recorded on 7/28/14) (emphasis added); Def. Ex. 19, Baker Deposition, 7/28/14, at 101:5-101:21.

Despite Appellees' claims, in order to reach this conclusion, Baker was required to draw upon specialized medical knowledge concerning causation in order to opine that Appellant's breast growth was caused by weight gain. The effect of Risperdal on a hormone such as prolactin is clearly a subject that requires specialized knowledge. This testimony clearly required the use of "scientific, technical, or other specialized knowledge within the scope of Rule 702." Pa.R.E. 701. Thus, we conclude that the trial court erred in determining that Baker's testimony did not constitute expert testimony.

Appellees counter that even if Baker's testimony constituted expert testimony, Baker, as a physician's assistant, was qualified to testify as both an expert in causation and a fact witness. **See** Appellees' Brief, at 14-16.

The qualification of an expert witness rests with the sound discretion of the trial court. **See Nobles v. Staples**, **Inc**., 150 A.3d 110, 113 (Pa. Super. 2016). "The standard for qualifying an expert witness is a liberal one; the witness need only have a reasonable pretension to specialized knowledge on a subject for which expert testimony is admissible." **Commonwealth v. Kinard**, 95 A.3d 279, 288 (Pa. Super. 2014) (*en banc*) (citation omitted). A

witness who is not a medical doctor may be qualified as an expert witness regarding medical issues. *See **Miller v. Brass Rail Tavern***, ***Inc***., 664 A.2d 525, 528-529 (Pa. 1995).

This Court has recognized that the rules governing expert and lay testimony do not preclude a single witness from testifying as both a lay witness and an expert witness in the same trial. *See **Commonwealth v. Huggins***, 68 A.3d 962, 967 (Pa. Super. 2013).

> The witness' association to the evidence controls the scope of admissible evidence that he or she may offer. In order to avoid jury confusion, the trial court should direct the [proffering party] to clarify when testimony, given in the form of an opinion, was based upon expert knowledge, as opposed to testimony regarding the facts as personally perceived…. [S]hould a single witness testify in dual capacities, the trial court must instruct the jurors regarding lay versus expert testimony and tell them that they are solely responsible for making credibility determinations.

***Commonwealth v. Yocolano***, 169 A.3d 47, 62 (Pa. Super. 2017) (some brackets added and omitted; quotation marks and citations omitted).

We recognize that Baker, as a licensed physician's assistant, had qualifications that *could* have met the standard for an expert witness. However, because the trial court believed Baker's testimony did not amount to expert testimony, the trial court failed to determine if Baker was qualified as an expert witness. Further, the trial court, believing Baker's testimony to be fact testimony, did not ensure that the jury was able to separate Baker's expert testimony from her lay testimony. ***See id***. As such, we find the trial

court abused its discretion and erred as a matter of law in permitting a lay witness to offer an expert opinion at trial.

Appellant argues that the effect of this erroneous ruling deprived him of a fair trial and that he should be granted a new trial on the issues of causation and damages. *See* Appellant's Brief, at 58. We are constrained to agree.

Throughout the entire trial, the parties relied on the opinions of experts as to the cause of Appellant's gynecomastia. Appellant's experts opined that Appellant's gynecomastia occurred before 2013 and was caused by Risperdal ingestion. Appellees' experts opined that weight gain rather than Risperdal ingestion caused Appellant to appear to have gynecomastia. Baker's testimony, in which she opined that Appellant's weight gain, rather than his Risperdal usage, caused him to appear to have gynecomastia, was the *only* causation testimony offered by a witness who personally treated Appellant.

This opinion was offered without the proper vetting and safeguards surrounding expert testimony. Further, this opinion was introduced into evidence due to the trial court's improper application of the law, which is clearly an abuse of discretion. Therefore, we find that the trial court abused its discretion in denying Appellant's request for a new trial, limited to the issues of causation and damages.

Judgment reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2017