## Brown *v.* American Steel Foundries, Appellant.

*Negligence—Custom—Evidence—Moving cranes—Contributory negligence—Sudden danger.*

1. A custom to be good should be certain, continued, reasonable, distinct, uncontradicted, and so notorious as probably to be known to the parties to the contract.

2. To prove negligence in the operation of a plant, evidence of customary methods pursued in other like establishments is not admissible to make out plaintiff's case, except under extraordinary circumstances.

3. In an action for personal injuries by an employee of an independent contractor, against the owner of a steel plant, where it appears that plaintiff was injured while working on the runway of a crane far above the working floor, it is error to admit evidence of a custom to ring a bell as a warning of the approach of a crane, where it was not disputed that a bell was rung to warn men on the

working floor far below, without it any where appearing that men working on the runway far above required such notice.

4. In such case, the evidence is insufficient to convict plaintiff of contributory negligence as a matter of law, where it appears that the only way that he could reach his work was by climbing past the runway, that defendant was warned to look after him and promised to do so, that it was doubtful whether plaintiff could have seen the crane approach on his ascent, but that as soon as he was in a position to see it from the runway, it was too close for him to escape.

5. Defendant could continue to operate the crane, under the circumstances, but it was bound to use reasonable care, considering the work which the employees of the independent contractor had to do.

6. Where a sudden emergency presents itself to a workman, he should not be held negligent though he may have done imprudent things thereafter.

Argued October 10, 1921. Appeal, No. 14, Oct. T., 1921, by defendant, from judgment of C. P. Allegheny Co., Jan. T., 1918, No. 1287, on verdict for plaintiff, in case of William Brown v. American Steel Foundries. Before MOSCHZISKER, C. J., WALLING, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Trespass for personal injuries. Before HAYMAKER, J.

The opinion of the Supreme Court states the case.

Verdict and judgment for plaintiff for $1,750. Defendant appealed.

*Errors assigned,* inter alia, (3-6) rulings on evidence, appearing by the opinion of the Supreme Court, quoting bills of exceptions.

*John G. Frazer,* with him *W. L. G. Gibson,* and *Reed, Smith, Shaw & Beal,* for appellant.—This case is ruled by Lowry v. Baldwin Locomotive Works, 253 Pa. 87.

See also, McIntire v. Pittsburgh Steel Foundry, 208 Pa. 34; Lessig v. Light Co., 270 Pa. 299; McNeil v. Steel Co., 213 Pa. 331; Chambers v. Machine Co., 251 Pa. 618.

*Meredith R. Marshall,* with him *Rody P. Marshall,* for appellee: Edsberg v. Baldwin Works, 240 Pa. 614, is almost identical with this case.

The principle of Carroll v. R. R., does not apply.

OPINION BY MR. JUSTICE KEPHART, January 3, 1922:

Appellee was employed by an independent contractor in connection with the work of rebuilding and strengthening a part of appellant's foundry. A traveling crane operated in the building, in a space 700 feet long, 50 feet wide and 20 feet high; its wheels ran on ordinary rails, similar to those used on steam roads, resting on steel girders three feet six inches high. Supporting the girders were steel columns 26 feet apart, and immediately under and between them were lattice-struts of steel to strengthen and stiffen the runway. Immediately adjoining one of these columns, outside the runway and 75 feet from one end, was a column supporting the roof of the building. Appellee was punching holes in the roof column a few feet above and outside the runway, on a small platform or hanging scaffold. The only way to reach the place of work, as he stated, was to climb to the runway, swing round the roof column to the scaffold outside and clear of the runway. He had been at work five or six weeks and was well acquainted with the character of the duties. He knew cranes were in continuous operation while the rebuilding was going on, and that a moving crane was a dangerous piece of machinery. Defendant likewise knew plaintiff was working at this particular place, what his duties consisted of, and that he would occasionally be called from his work above to the floor beneath. While plaintiff assumed the usual risks of his employment, he did not assume the unusual risk that defendant would neglect reasonable precaution to safeguard him while going to and from his work. On the morning of the accident, after working for some time, he was compelled to leave, soon thereafter returning. In an effort to ascend he climbed the open-

work of the column, swung onto the lattice-strut and in this position permitted a crane to pass. He then proceeded, first leaning around the column to ascertain whether another crane was coming. Seeing none, he continued his ascent to the runway, but was scarcely located on it when a crane was discovered within thirty feet, moving rapidly towards him. In getting back to a place of safety he slipped from the runway, and, presumably grasping wildly, in some way his fingers were pinched between the wheels of the crane and the track. He recovered a judgment in the court below and defendant takes this appeal, arguing appellee was guilty of contributory negligence, and that the court below made some trial errors.

His statement he could not see the crane coming when he leaned around the column after the first crane had passed may be true, as it might not have started; it had to travel 75 feet from the end of the runway to where appellee was working. But that he was prevented from seeing by a wall was certainly not correct, from the admitted physical facts. The wall was 25 feet away, on line with but not extending beyond the columns; the crane operated in a space 55 feet wide, at right angles to the columns, and had to travel some 75 feet to reach him. Undoubtedly this large moving object within this space could be seen, especially as part extended much below the runway. But there was evidence from which the jury might infer the crane could not be seen after it started. When appellee stood on the lattice-strut after the first crane passed, he raised one foot to the flange of the girder, which must have necessitated a reach of from one and a half to two feet; he then placed the other foot on top of the girder three and a half feet above him, causing a lift of five or six feet. To do this he swung his body to a horizontal position, holding on to the roof column, thence to the top of the girder or runway. The three-and-a-half-foot solid girder and six-inch rail, with his body in this position, would interfere with

his vision, and it would take but a brief space of time for the crane, running at three miles an hour, to reach the place where plaintiff first saw it, within 25 or 30 feet of the working place. How long it required him to execute this movement and place himself on top of the runway is not shown, but this length of time, compared with the time it took the crane to move the distance of 50 or 60 feet, was so short the court could not declare as a matter of law he was guilty of contributory negligence in failing to see the crane approach when he was climbing to the runway. As soon as he could see from this latter position, the crane was so close that, in his effort to escape, he was injured. A sudden emergency presented itself and he should not be held negligent though he might have done imprudent things thereafter. It was appellant's duty to give him a reasonably safe place in which to work, consistent with the circumstances, and, while cranemen do not ordinarily expect people on the runway, it appears from the evidence appellant was warned to look after these men and promised to do so. It could continue to operate the cranes, but, under the circumstances as testified, it must use reasonable care, considering the work the men were required to do. The case of Lowry v. Baldwin Locomotive Works, 253 Pa. 87, is not in point, as plaintiff in the case at bar had no other means provided to reach his working place.

The court admitted evidence of failure to observe the custom of sounding a warning to men on the runway or of placing a man on the lookout of the crane to notify them of its approach. It was not disputed there was a bell to warn men working on the floor below when the crane was used, but it nowhere appears in the evidence that men working on the runway required such notice; in fact they were rarely there,—the warning signal was not used for this purpose.

To establish negligence of defendant, through failure to observe a custom which applied to circumstances different from those where such precautions were neces-

sary, was improper, and the admission of such evidence was error. Plaintiff had a ground of negligence on which to plant his action. The admission of this testimony did not show defendant's method of operating the crane was the cause of the accident; nor did it appear the plants where the custom was supposed to exist were similarly located, with working conditions like those where this accident took place. A custom, to be good, should be certain, continued, reasonable, distinct, uncontradicted and so notorious as to be probably known to the parties to the contract: Ambler v. Phillips, 132 Pa. 167; Adams v. Pittsburgh Insurance Co., 95 Pa. 348; Corcoran v. Chess, 131 Pa. 356.

A party charged with negligence disproves it by showing that the tools employed were those in general use or that the place in which to work was reasonably safe, but, to prove negligence, evidence of customary methods pursued in other like establishments is not admissible to make out plaintiff's case, except under extraordinary circumstances: Chambers v. Mesta Machine Co., 251 Pa. 618, 623; Cunningham v. Fort Pitt Bridge Works, 197 Pa. 625, 630; Clark v. Butler Junction Coal Co., 259 Pa. 262, 267. There is no proof in this case that it was the custom or usage for gongs to be rung or to have lookouts for men in unusual places, far above the working floor, in the path of the crane itself and not what might be suspended from it.

The third, fourth, fifth and sixth assignments of error are sustained and the judgment is reversed with a new venire.