Jemison *v.* Pfeifer, Appellant.

Argued March 24, 1959.  Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*Sanford M. Chilcote,* with him *David J. Armstrong, J. H. Lembersky,* and *Dickie, McCamey, Chilcote & Robinson,* for appellants.

*Robert B. Ivory,* with him *Evans, Ivory & Evans,* for appellee.

OPINION BY MR. JUSTICE MCBRIDE, July 2, 1959:

The Penn Iron & Metal Company, which is not a party to this suit, was the owner of a concrete building which had been abandoned for many years. It wished to demolish the building and for that purpose contracted with a partnership trading as Homestead Builders Supply and Wrecking Company.[1] Homestead, as part of the work of demolition, rented a crane from Allegheny Construction Equipment Company which furnished plaintiff Jemison as operator thereof together with DeAngelis, an oiler, to keep the equipment in condition. On March 8, 1953, after plaintiff had been engaged for several hours in the work of demolition, the upper portion of the building fell on the crane which he had been operating and he was seriously injured.

---

[1] For convenience we refer to the defendants as "Homestead" or "defendant".

At trial the jury found in favor of plaintiff and the court below entered judgment on the verdict.

On appeal Homestead contends (a) It is entitled to judgment non obstante veredicto; (b) it is entitled to a new trial on the ground that the verdict was against the weight of the evidence; (c) the verdict is excessive. We shall consider those contentions in that order.

As to the first point, although the defendant produced evidence which, if believed, would have warranted a verdict in its favor, on appeal we must apply the oft repeated governing principle that the verdict winner is entitled to the benefit of all findings that reasonably could have been made in his favor and that all contrary evidence is to be rejected. *Utility Appliance Corp. v. Kuhns*, 393 Pa. 414, 143 A. 2d 35; *Stevens v. Reading St. Ry. Co.*, 384 Pa. 390, 121 A. 2d 128.

Viewed in this light, the jury could have found the following facts to support the general verdict it rendered. The building which Homestead contracted to demolish was erected between April and October, 1926. It was a three story concrete structure, the walls of which were about 24 inches thick. It would appear that when originally built the building consisted of only two stories and the third was later added. Each of the first two stories, about 20 feet high, were reinforced by rods and were tied-in together; the third story, about 15 feet high, was reinforced by rods but was not tied-in to the other two, it simply rested on top of them. This condition, however, was not apparent from the outside, and apparently neither the defendant, Homestead, nor the plaintiff, Jemison, knew of it. That fact, however, could have been determined by an examination which would have entailed making an entry into the wall by the use of a drill, air hammer or sledge. Jemison, an experienced crane operator since 1947, had on prior occasions operated his employer's crane on another demolition

project being carried on by defendant. When he came to this particular project he received no instruction from defendant's foreman except to "ball the building to the ground and see that none of it fell on the railroad tracks nearby." Jemison began using what is known as a "headache ball", weighing 2000 lbs., suspended on a cable attached to the crane. By the use of the crane he was directing the force of the headache ball against the east and west sides of the building, 4 to 5 feet from the top. It was his purpose to knock off four or five feet from the top and then the connecting rods would be cut or burned by torches, by one of Homestead's employees, and he would continue to operate in this fashion until the building would be razed. This was a proper method of demolition. His crane was in proper position for such use of the headache ball upon the assumption that the third story was actually tied-in to the first two stories. Had he known that it was not tied-in he could have and should have removed his crane back some distance so as to avoid injury to himself. Before any rods had been burned and while Jemison, wanting a drink of water, had stopped the operation of the crane and was on the catwalk preparing to jump to the ground, he heard someone cry "Look out, it's coming". Thereupon the third story toppled off, turned upside down, fell on his crane and seriously injured him. The question with which we are concerned is whether the law imposed any duty upon Homestead to make a reasonable, preliminary inspection to determine problems of the type herein involved, or whether, having contracted for the crane and operator from Allegheny, it was sufficient to let Allegheny's crane operator find out for himself whether there were latent defects which would put him in danger.[2] Neither the jury nor the

---

[2] The Trial Judge stated this issue as follows: ". . . To say it another way, the box, which was reinforced concrete, and the

court below were competent, by virtue of their general knowledge, to determine whether such an inspection should have been made. In such case expert testimony was properly relied upon. As we said in *Fox v. Keystone Telephone Co. et al.,* 326 Pa. 420, 427, 192 Atl. 116: ". . . the custom or practice prevailing in a particular business in the use of methods, machinery and appliances is a most important factor in determining the question of negligence." Such testimony is admissible when offered by defendant in an attempt to disprove negligence, *Potere v. Philadelphia,* 380 Pa. 581, 112 A. 2d 100; *McAdoo v. Autenreith's Dollar Store,* 379 Pa. 387, 109 A. 2d 156; *Hudson v. Grace,* 348 Pa. 175, 34 A. 2d 498; *Price v. New Castle Refractories Co.,* 332 Pa. 507, 3 A. 2d 418, as well as when offered by plaintiff to prove negligence, *Donnelly v. Lehigh Navigation Electric Co.,* 258 Pa. 580, 102 Atl. 219; 38 American Jurisprudence, 1015.

Defendant contends, first, that the third story bin actually was tied-in to the first two stories; but in the light of the verdict, this contention must be rejected. Secondly, it contends that even if the third story was

bottom of the building, which was reinforced concrete, were not tied together, that is, that the box was sitting on top of the other structure and that those tie rods or steel rods were not running through, joining the box and the bottom part of the building.

"That briefly is the position of the plaintiff with regard to the construction of the building. The plaintiff does not contend that that in itself was negligence, to construct a building in that manner, but the plaintiff says that the building being constructed in that manner, according to the plaintiff's evidence, should have been known or was known to the defendant; if it wasn't known to the defendant, the defendant should have made an inspection or investigation to determine whether those two portions of the building were tied in by steel rods, and if they were not tied in, as the plaintiff contends, that it was the duty of the defendant to warn the plaintiff, who was the operator of the crane, that he should have been warned about the building."

not tied-in it had no duty and it was not customary in the business to make a special inspection to determine that fact. The difficulty with its position is that the plaintiff produced photographs to show that there was no tie-in. He then introduced expert testimony to the effect that it was the duty of defendant, having entered into the demolition contract, to make an inspection of the building to satisfy itself as to the integrity of the building because the method, manner and procedure of demolition would necessarily depend upon the finding of such inspection.

Plaintiff called a witness who for twenty-one years had been superintendent of one of Pittsburgh's best known building wreckers and during that time supervised the demolition of hundreds of buildings. He was acquainted with the customs and practices of the industry with respect to inspection of buildings such as the one here involved. His qualifications were not questioned. The firm for which he worked had sent him to look at this particular building for the purpose of bidding upon the work. He testified as follows: "Q. According to the custom of the trade and the practice, what would have been done with regard to inspection or investigation of that building before wrecking could be started? A. Well, this particular building, when I looked at it, was top-heavy; the bin on the top of the building was top-heavy. Q. That is, you mean the greatest weight was up at the top? A. That's right. And from the joint, which shows in the picture here, which would be the slab of the floor of the bin, it would have been necessary to find out if that was tied into the balance of the building." He also testified that according to the practice in the industry, if something unusual or dangerous such as the failure of a tie-in was discovered, it would be the accepted practice to call that to the attention of the workman before he was permitted

to operate the crane in demolition and that such an inspection would have required *only an hour's time* for two men working with an air hammer.[3] He had not himself made such an inspection because it was not necessary for the purpose of making a bid although it would have been necessary before the actual work started.

It would appear, therefore, that the evidence warranted the jury in concluding that plaintiff was justified in assuming that the concrete building was reinforced throughout and that it was therefore proper for him to use the headache ball in the manner he did for the purpose of breaking up the concrete and thus permitting any reinforcement rods to be removed by the use of a torch. It was not equally justified on the part of defendant to make this assumption because it owed the primary duty, not only to its own workmen but to any sub-contractor and the workmen employed by that sub-contractor, to make, in accordance with the custom of the trade, such reasonable inspection as would inform such persons whether the concrete bin was tied-in to the two lower floors of the building. It is obvious, in the light of the verdict, that had there been such a tie-in the bin would not have turned over and fallen on the crane, as it did, since the tie-in would have prevented such a precipitous result. Since the degree of danger which might be anticipated from a collapse of the building was high, a correspondingly high degree of care was called for. In *MacDougall v. Penna. Power*

---

[3] The Trial Judge affirmed a point for charge submitted by defendant, as follows: "I have been requested by counsel for the defendant to charge you as follows, which I shall do: If you believe that a reasonably prudent wrecking contractor would not be required to make the type of inspection of a building as testified to by Mr. Douglas, a witness for the plaintiff, your verdict must be in favor of the defendants. I so instruct you."

& *Light Co.*, 311 Pa. 387, 396, 166 Atl. 589, we said: "Vigilance must always be commensurate with danger. A high degree of danger always calls for a high degree of care. The care to be exercised in a particular case must always be proportionate to the seriousness of the consequences which are reasonably to be anticipated as a result of the conduct in question."

Defendant relies heavily upon *Doyle, Administratrix et al. v. Atlantic Refining Company et al.*, 357 Pa. 92, 96, 53 A. 2d 68, in which we said: "Plaintiffs have not sustained the burden of establishing a custom that was 'certain, reasonable, distinct, uncontradicted, continued and so notorious as to be probably known to all parties to be controlled by it': Carlo v. Bessemer and Lake Erie R. R. Co., 293 Pa. 343, 347, 143 A. 5; Brown v. American Steel Foundries, 272 Pa. 231, 236, 116 A. 546." It seems to us, however, that the evidence in this case fully met this test. While it is true that the defendant presented witnesses who denied that there was any such custom, such mere denial does not demonstrate, as a matter of law, that the custom was not "certain, reasonable, distinct, uncontradicted, continued and so notorious as to be probably known to all parties to be controlled by it". The jury undoubtedly accepted the testimony of plaintiff's two witnesses who fully met that rule and rejected the testimony of defendant's witnesses who denied it.

Defendant also cites *Miller v. Hickey*, 368 Pa. 317, 81 A. 2d 910, and *Nettis v. General Tire Co.*, 317 Pa. 204, 177 Atl. 39. In *Nettis*, supra, although we held that an owner is not charged with the absolute duty of having the premises safe for a business visitor, we also said that it is the duty of the owner to maintain such premises in a reasonably safe condition for the contemplated uses thereof by those who come by invitation express or implied. While the owner of a building, or

a contractor for its demolition, is not an insurer of the safety of the employees of a sub-contractor, this extends only to exonerate as to latent defects of which the owner or contractor "was ignorant and which could not be discovered in the exercise of reasonable care and diligence", citing *Lentz v. Allentown Bobbin Works*, 291 Pa. 526, 140 Atl. 541.

Here the affirmative testimony shows that the custom of the trade required an inspection and it is perfectly reasonable that that inspection should have been made since it would entail no more than an hour's work for two men to ascertain the very condition which caused the injury to plaintff.

In *Miller v. Hickey*, supra, there was involved an independent contractor whose foreman employee was under the supervision of his own employer and not of the defendant, which is precisely the situation in the present case. He was injured while working on a fire escape as the result of a latent defect of which neither plaintiff nor defendant had any knowledge. But in the *Miller* case there was an inspection which resulted in a recommendation only that there be a paint job performed. The inspection disclosed that the fire escape was safe and in good condition. There was no contention by plaintiff that the inspection was not a proper one or was not one that was customary in the trade or that a proper inspection would have disclosed the dangerous or defective condition of the fire escape that broke. There also, while holding that an owner or possessor of land is not an insurer and is not charged with the absolute duty of having his premises in a safe condition, it was recognized that he nevertheless is required to disclose latent defects if they could be discovered in the exercise of reasonable care and diligence. In an opinion which reviewed all the authorities and entered a judgment for defendant non obstante vere-

dicto,[4] Justice BELL pointed out that the plaintiff "failed to prove that the defect could or should have been discovered by a proper or reasonable inspection." It is precisely such a failure which was affirmatively proved by the plaintiff in the present case. *Pieckowicz v. Oliver Iron & Steel Co.*, 351 Pa. 209, 40 A. 2d 416; *Nettis v. General Tire Co.*, 317 Pa. 204, 177 Atl. 39; *Lentz v. Allentown Bobbin Works*, 291 Pa. 526, 140 Atl. 541; *Kehres v. Stuempfle*, 288 Pa. 534, 136 Atl. 794; and *Travers v. Delaware Co.*, 280 Pa. 335, 124 Atl. 497, all cited by appellants, in urging this Court to find that there was no evidence of negligence, are all cited and discussed in the *Miller* case and are in accord with the rationale of that case.

The defendant next takes the position that the plaintiff was guilty of contributory negligence as a matter of law. But, as we have pointed out above, there was a duty not only in accordance with the custom of the trade but also in accordance with normally safe procedures for the defendant to have made the preliminary examination by any feasible method, which would have demonstrated that the upper bin had not been tied-in to the lower part of the building. It would be improper to hold that plaintiff was required to anticipate or assume that defendant had not taken the customary precautions or had not used due care in preparing for the demolition of the building. He was perfectly justified, in the absence of any information to the contrary, in assuming that the concrete building was reinforced and tied-in throughout. What we said in *McFadden v. Pennzoil Co.*, 341 Pa. 433, 438, 439, 19 A. 2d 370, is applicable here: "Apt, therefore, is the following, from Wagner v. P. R. T. Co., 252 Pa. 354, 359-60: 'The failure to anticipate negligence which results in an injury is not negligence and will not defeat an action for the injury

---

[4] Justice CHIDSEY joined by Justices STERN and JONES dissenting.

sustained. A party is not bound to guard against the want of ordinary care on the part of another; he has a right to presume that ordinary care will be used to protect him and his property from injury. No one can complain of want of care in another where care is only rendered necessary by his own wrongful act.' "

It is true that two of defendant's witnesses gave evidence that plaintiff, despite frequent warnings, demolished the first floor center columns and it was this which caused the building to fall. Even if this had not been challenged by the exhibits which show the lower portion to be not only intact but apparently untouched, it raises at most a question of fact for the jury's determination and not one of law. The same is true of defendant's testimony that defendant's employees warned plaintiff to desist from continuing the use of the headache ball because the building was shaking.

The defendant next contends that the verdict was against the weight of the evidence. In considering this contention we apply a different rule than is applied in considering a motion for judgment n.o.v. In the latter instance we reject all evidence which does not support the verdict while in the former we consider all the evidence and assess its weight to determine whether the lower court abused its discretion. Our review of the evidence agrees with that of the court below and we agree with its finding that the weight of the evidence did not so preponderate in favor of the defendant so as to require that the jury verdict in favor of the plaintiff be set aside.

The final contention of the defendant is that the verdict was excessive. It is perfectly clear that this plaintiff was seriously injured. When he was extricated from his position under the wrecked crane he was taken to the hospital, where he was found to have a compound fracture of the right ankle, a comminuted

fracture of the pelvis, general body contusions, laceration of the scalp; there was blood in the urine showing that he had a contusion of the bladder, and he was suffering from shock. The surgeon used normal operative procedures for the compound fracture and dislocation of the ankle, requiring that a screw be put through the internal malleolus; a cast was applied and the patient returned to bed; the comminuted fracture of the pelvis was put into alignment by traction which left a permanent deformity. After leaving the hospital, on crutches, he was required to have physiotherapy. He was in the hospital from March 8, 1953 until June 27, 1953. At the time of trial there was still limitation of motion in the right ankle; the pelvis was still tilted due to the fracture and he was limping because the right heel was still ½ inch to an inch off the floor. There was competent medical testimony that the injury to the pelvis was a definite, permanent disability not likely to improve. His hospital and medical bills totalled $2,778. His average earnings for the three years prior to the accident were $5,520.89 a year. He was absent from work approximately 7½ months and suffered some permanent loss of earning power. Plaintiff was 46 years old at the time of trial. The court below did not believe that the verdict of $35,000 was excessive nor do we. This conclusion is fortified by the fact that none of the medical evidence, or any other evidence of damage, was contradicted or denied in any way by the defendant. The various issues of negligence, proximate cause and contributory negligence were submitted to the jury in a careful, complete and fair charge.

The judgment is affirmed.