520 A.2d 863

**Regis J. BINDER and Lilian B. Binder**

**v.**

**JONES & LAUGHLIN STEEL CORPORATION, a Corporation, and Washington Tool & Machine Company**

**v.**

**WEAN UNITED, INC.**

**Appeal of JONES & LAUGHLIN STEEL CORPORATION, a Corporation.**

Superior Court of Pennsylvania.

Argued May 20, 1986.

Filed Jan. 22, 1987.

392

Kathleen S. McAllister, Pittsburgh, for appellant.

Paul E. Moses, Pittsburgh, for appellees.

Before BROSKY, KELLY and ROBERTS, JJ.

ROBERTS, Judge:

Generally, Restatement of Torts, 2nd (1965), § 388 imposes liability upon suppliers of chattel for negligent failure to disclose the chattel's dangerous conditions. This appeal, involving injuries to an employee of the supplier's bailee caused by the explosion of a cast-iron roll, presents questions regarding the existence and scope of the duty to disclose under § 388. The most significant of these questions is whether the supplier meets its standard of care by informing the bailee of the chattel's general characteristics, but not providing specific information or warnings regarding the chattel's alleged dangerous propensities. We also review several allegations of trial error, and conclude that there is no basis to disturb the jury's verdict. Accordingly, the judgment is affirmed.

## I.

 The appellee, Binder, an employee of Washington Tool & Machine Co. ("Washington"), brought this action for negligence against Jones & Laughlin Steel Corp. ("J & L"), after J & L's cast-iron roll exploded, injuring Binder. J & L joined Washington and Wean United, Inc., the manufacturer of the roll, but agreed to dismiss them before the end of trial.[1] At the close of the evidence J & L requested several

1. The dismissal of Washington extended only to its alleged negligence. There was an indemnity agreement between Washington and J & L, consideration of which was severed from the negligence action by the trial court. Accordingly, no issue relating to indemnification is before us and any issue relating to the negligence of Washington has not been preserved for review. *See M.N.C. Corp. v. Mt. Lebanon Medical Center*, 334 Pa.Super. 359, 364, 483 A.2d 490 (1984).

 Aside from appellant's failure to preserve any issue regarding Washington's negligence, it is clearly the law of this Commonwealth that the negligence of an employer neither bars nor diminishes an employee's recovery against a third person. *See Heckendorn v. Consolidated*

points for charge, including an instruction relating to Binder's contributory negligence. The trial court refused this instruction and the jury returned a verdict of $420,000 for Binder and $80,000 for his wife. Pursuant to Pa.R.Civ.P., Rule 238, the trial court added $187,500 in delay damages.[2]

Viewed in the light most favorable to Binder as verdict winner, *Fannin v. Cratty*, 331 Pa.Super. 326, 331, 480 A.2d 1056 (1984), the evidence established that Washington had agreed to replace a shaft which had broken from the center of the roll.[3] To accomplish the replacement, J & L's purchase order specifically requested Washington to remove the remainder of the original shaft, to bore a hole through the center of the roll, and to "shrink fit" the roll onto the new shaft. The process of "shrink fitting," which Washington had performed for J & L for about ten years, involves expanding the roll with heat, so that the hole through the center could be widened and the new shaft installed. When the heated metal cools, the roll contracts or "shrinks" to fit the new shaft. Washington customarily applied heat with propane and oxygen fueled torches. Its fitters would constantly move the flame over the roll's surface to uniformly distribute the heat. J & L's representatives visited Washington's plant frequently and knew that Washington employed this method almost exclusively.

*Rail Corp.,* 502 Pa. 101, 465 A.2d 609 (1983); *Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344, 354–55, 414 A.2d 100 (1980); *Lambert v. Pittsburgh Bridge & Iron Works,* 463 Pa. 237, 344 A.2d 810 (1975). Cf. *Van Buskirk v. Carey Canadian Mines Ltd.,* 760 F.2d 481, 497 (3rd Cir.1985) (fact that employer also failed to warn should not absolve supplier of duty to warn). Appellant is thus not entitled to relief regardless of whether we approach the issue as one involving Washington's alleged superior duty to warn or as one involving its failure to adequately warn as an intervening cause of Binder's injury. Accordingly, there was no error in the trial court's failure to submit the question of Washington's negligence to the jury.

2. Rule 238 has since been held to violate principles of procedural due process. See *Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 515 A.2d 1350 (1986). Since appellant does not challenge the award of delay damages, it is not entitled to relief under *Craig,* 512 Pa. at 66, 515 A.2d at 1353.

3. The roll was used to manufacture J & L's steel products. It weighed over 5,000 pounds, was 23 inches long and 30 inches in diameter.

After the removal of the original shaft and the boring of the hole, Binder and another employee were assigned to shrink fit the roll. With the help of a crane, Binder stood the roll on a table and began to heat it with the propane and oxygen fueled torches. Shortly after Binder began the heating process, he was joined by the other employee. After about an hour, they stopped to allow the foreman to measure the hole in the center of the roll. No expansion had yet occurred. Within minutes after they resumed heating, the roll exploded in two, crushing Binder's leg and causing burns, bruises and lacerations. The injury also caused Binder to miss nearly a year and a half of work, and within two months of his return, he suffered a heart attack which a physician related to the stress induced by his long absence.

The evidence further demonstrated that the roll had a carbon content of 3.41%. This relatively high percentage of carbon is the characteristic distinguishing cast-iron from steel, which typically possesses less than 1% carbon. While the greater carbon makes cast-iron less ductile, or flexible, than the steel it is used to mold, it also makes it brittle when heat or other pressure is applied. Also, the outer surface of the roll was chill casted, which means that it was cooled more rapidly than the inside of the roll. This chill-casting technique makes the surface even harder, but puts it in a state of compression, pushing towards the center of the roll. The inside of the roll cools more slowly and is cast in a state of tension, pulling away from the center of the roll. The plaintiff's expert testified that the combination of these conflicting stresses and the high carbon content made the cast-iron likely to split when heated.

Along with its purchase order, J & L provided Washington with a copy of the purchase order to the manufacturer, which included a notation that the roll was to be made of cast-iron. An employee of Washington's main office converted the former purchase order to an in-house shop order. The shop order was then transmitted, along with diagrams which showed that the roll was chill-casted, to the manufac-

turing office, which scheduled and otherwise coordinated the necessary work.[4] The documents were then sent to a foreman on the floor of Washington's plant, who instructed the workers. The papers contained no information that the roll possessed a high percentage of carbon, nor did they specifically warn that it had a dangerous propensity to crack when heated.

## II.

Section 388 of the Restatement of Torts, 2nd imposes liability for damages caused by suppliers of chattel who fail to use reasonable care to inform likely users of the chattel's dangerous conditions.[5] J & L first argues that it had no duty to inform Binder, because there was insufficient proof that the roll was dangerous. Viewed in the light most favorable to Binder as verdict winner, *Fannin v. Cratty, supra,* the evidence established that the roll weighed over two tons and, because it possessed a high carbon content and was chill-casted, was likely to split when heated. Nevertheless, J & L contends that because these features were common design characteristics, the roll was not defective and could not be found to be dangerous. However, even a perfectly made article may be unsafe for a use different from the one for which it was designed. *See* Restatement of Torts, 2nd § 388, comment g; *Cf. Berkebile v. Brantly Helicopter Corp.,* 225 Pa.Super. 349, 354, 311

---

4. The diagrams were admitted into evidence but were not made a part of the record on appeal. We are thus unable to discern the extent to which this information was made explicit in the diagram.

5. § 388. Chattel Known to be Dangerous for Intended Use
One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
 (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
 (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
 (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

A.2d 140 (1973), *aff'd* 462 Pa. 83, 337 A.2d 893 (1975). The mere fact that chattel was designed to possess the characteristics which make it dangerous vitiates neither the danger nor the corresponding duty to warn an unsuspecting user. On this record, the features which may have benefitted the steel molder clearly endangered the shrink fitter. The evidence amply supported the jury's conclusion.

■ J & L also challenges the sufficiency of the evidence regarding whether it "had reason to know" of the roll's dangerous propensity to split when heated. Without such evidence, of course, there is no duty to warn of the danger. We note at the outset that J & L was in the business of manufacturing metal products. The evidence also established that J & L supplied the roll to Washington to "shrink fit" it onto a new shaft. Thus, J & L obviously knew that the roll was to be expanded with heat. It also knew the specific features which made the roll dangerous. On these facts alone, a jury could reasonably infer that J & L "had reason to know" that the roll would be dangerous for its intended use. J & L counters that it had no reason to know of the danger because it never actually knew of a situation where application of heat caused a roll to split. However, our courts have never required negligence plaintiffs to prove a defendant's actual knowledge of the existence of a dangerous condition. Nor does the Restatement provision which governs this determination of liability impose such a requirement. See note 5, supra. An "actual knowledge" standard would fundamentally alter the cause of action for negligence, and would require an injured plaintiff to show an absence of care approaching recklessness. We reject any suggestion to impose such a standard.[6]

6. The related argument that the trial court erred by failing to charge the jury on the issue of whether J & L knew or had reason to know of the dangerousness of the roll is plainly without merit. Our review indicates that such a charge was given. The relevant portion of the record reads:

... One who supplies directly or through a third person a chattel, which in this case is the roll in question, for another to use is subjected to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by

## III.

Assuming, as it must, the existence of a duty to inform, J & L next contends that it met its duty by disclosing in the accompanying documentation that the roll was cast-iron and chill casted. Reduced to simplest terms, a judicial determination of the adequacy of information disclosure in actions brought under § 388 requires no more than an analysis of whether the alleged tortfeasor breached the standard of care required of the "reasonable man" in a similar situation. See *Manning v. Andy*, 454 Pa. 237, 243, 310 A.2d 75 (1973) (Manderino, J. dissenting); Restatement of Torts, 2nd, § 283 (1965). In *Thomas v. Arvon Products Co.*, 424 Pa. 365, 369, 227 A.2d 897 (1967), a case decided under § 388, our Supreme Court focused our inquiry even further: "(t)he care to be exercised in a particular case must always be proportionate to the seriousness of the consequences which are *reasonably to be anticipated* as a result of the conduct in question" (citations omitted).

■ When an employer acts as the nexus between the supplier and the actual user of the dangerous chattel, the law clearly does not impose a standard of care which would require the supplier to *directly* inform the user of the dangerous condition. As J & L correctly suggests, the exigencies of commerce do not reasonably permit the supplier to discover who to inform, since it is the employer who ordinarily decides who will "use" the chattel.

But just as the law does not require the supplier to ignore the employer, it does not allow him to escape the duty to disclose by cavalierly relying on the employer to somehow pass the information along to the actual user. Comment n to § 388 provides:

> its probable use for the physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied if the supplier, (a), knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, . . .

Accordingly, appellant has established no right to relief on this ground. *See Pratt v. Stein*, 298 Pa.Super. 92, 142, 444 A.2d 674 (1982).

Even though the supplier has no practicable opportunity to give this information directly and in person to those who are to use the chattel or share in its use, it is not unreasonable to require him to make good any harm which is caused by his using so unreliable a method of giving the information which is obviously necessary to make the chattel safe for those who use it and those in the vicinity of its use.

A supplier must thus be concerned not only with what information it conveys, but how it conveys it. The information given must be complete and accurate to protect against foreseeable risks of harm, and must be presented to make it reasonably likely to notify the actual user of these risks. *See Dougherty v. Hooker Chemical Corp.*, 540 F.2d 174, 179 (3rd Cir.1976).

■ On this record, the risk of serious injury was clearly foreseeable. Appellant knew that a high carbon, chill-casted, heavy metal object would be dangerous to one who stood near it, applying heat. Nevertheless, the information which J & L submitted to Washington can at best be described as random. It contained nothing even vaguely resembling a warning and no listing of any of the chemical components of the roll it was meant to describe. Clearly, a jury could reasonably find that the information, as provided to Washington, lacked the specificity and conspicuousness necessary to attract the attention of Binder or one of the several agents responsible for instructing him. Accordingly, the evidence was sufficient to prove the inadequacy of the disclosure.

### IV.

■ A. Next, J & L challenges the trial court's failure to instruct the jury regarding plaintiff's contributory or comparative negligence. This instruction is required when there is some evidence, however slight, in the record to support a finding of contributory negligence. See *McCullough v. Monroeville Home Association*, 270 Pa.Super. 428, 431, 441 A.2d 794 (1979). Conversely, where no evidence

would support a finding of plaintiff's negligence, a trial judge must not give the instruction to the jury. See *Hanlon v. Sorenson*, 289 Pa.Super. 268, 275, 433 A.2d 60 (1981). To determine whether a plaintiff, injured in the course of employment, is contributorily negligent so as to bar or reduce recovery, a court considers the employee's working conditions and the circumstances incident to his employment, including his obligation to do his job, *Seewagen v. Vanderkluet*, 338 Pa.Super. 534, 543, 488 A.2d 21 (1985).

Measured by these standards, there was no error in the trial court's failure to charge on plaintiff's negligence. Relying on the testimony of its expert witness, J & L contends that Binder was negligent: 1) by standing the roll on its end, thus preventing expansion by allowing heat to escape through the hole in the center, 2) by continuing to heat the roll after it became evident that it was not expanding, and 3) by heating the roll with torches rather than a furnace. Even if the jury would have believed these assertions, it could not have found Binder to be negligent. It is a well-settled principle in this Commonwealth that a plaintiff is not negligent for failing to anticipate the negligence of others, *Gregorius v. Safeway Steel Scaffolds Co.*, 409 Pa. 578, 582–83, 187 A.2d 646 (1963); *Jemison v. Pfeifer*, 397 Pa. 81, 91–92, 152 A.2d 697 (1959). As the *Jemison* court explained, "[n]o one can complain of want of care in another where care is only rendered necessary by his own wrongful act," *id.* (citation omitted). Here, as a result of J & L's prior negligent failure to adequately warn, Binder was unaware of facts which would have alerted him to the dangers of applying heat to cast-iron which was chill casted. Had he been aware of these facts, the actions he took during the "shrink fitting" process may have formed the basis for a finding of contributory negligence. Without the warning, however, Binder only failed to predict the negligence of J & L, a standard of care which our courts have consistently refused to impose on plaintiffs. See *Jemison*, *supra*.

Our determination is supported by the recent decision in *Speer v. Berry*, 349 Pa.Super. 365, 371, 503 A.2d 409 (1985), where we upheld the refusal to give a contributory negligence charge in an action by a tenant against his landlord for negligent maintenance of a porch. There, the court wrote:

> ... the evidence did not show that the husband-plaintiff was testing a known danger ... On the contrary, the evidence showed that the defect was latent and neither obvious nor known to him. Therefore, it was not error to fail to charge the jury on contributory negligence. See: *Brancato v. Kroger Co. Inc.*, 312 Pa.Super. 448, 455, 458 A.2d 1377, 1381 (1983).

Likewise, on this record, the danger in the roll clearly was latent and not known to the plaintiff. Accordingly, the failure to charge was not error.

■ B. Appellant also contends that the court erred by not instructing the jury that just because an accident occurred, negligence does not follow. In *Robert v. Chodoff*, 259 Pa.Super. 332, 356–57, 393 A.2d 853 (1978), a medical malpractice action, this court rejected a claim that it was error not to instruct the jury that an unexpected, unfortunate or even disastrous result does not alone prove negligence. We explained:

> While we agree with this proposition, see *Donaldson v. Maffuci*, 397 Pa. 548, 156 A.2d 835 (1959); *Ragan v. Steen*, [229 Pa.Super. 515, 522, 331 A.2d 724 (1974)], we do not believe that the omission of this charge in the instant case amounts to reversible error. The lower court's charge repeatedly emphasized that appellee had the burden of proving appellant's specific acts of negligence caused appellee's brain damage; implicit in these instructions is the converse proposition that a finding of negligence cannot be grounded upon the ultimate result of brain damage alone.

The court in this case did instruct the jury with regard to the plaintiff's burden of proof, causation and the duty of due care. Like the jury in *Robert*, the jury here was surely

able to infer that negligence was absent if it found that one of these elements did not exist. Accordingly, the failure to give this requested charge was not error.

■ C. Nor are we persuaded that the trial court's exclusion of expert testimony by J & L's machine shop foreman forms a basis for appellate relief. The foreman was allowed to testify about J & L's own shrink-fitting technique, but was not allowed to explain the reason why it chose this technique over the one used by Washington. If this evidence was offered to prove Washington's negligence, then it is neither preserved for review nor relevant. See note 1 supra. But even if it was offered to show that J & L lacked knowledge of the roll's danger, a local rule required the proponent of expert testimony to file a report stating the expert's findings and conclusions.[7] Since no report was filed here, the trial court's exclusion remedy was not an abuse of discretion.

## V.

■ Finally, J & L alleges that the plaintiff has not proved his claim for loss of future wages. It is axiomatic that an appellate court will not substitute its judgment for a jury verdict which is reasonably supported by the evidence, *Riddle Memorial Hospital v. Dohan,* 504 Pa. 571, 578, 475 A.2d 1314 (1984). Viewed in the light most favorable to Binder as verdict winner, *Fannin v. Cratty, supra,* the evidence established that plaintiff suffered a heart attack two months after he returned to work following his injury. A cardiologist testified that the stress of returning to work and the strain of performing his job without the full use of both legs aggravated a pre-existing heart condition, thus accelerating the occurrence of plaintiff's heart attack. While J & L's experts disputed the existence of a relationship between Binder's return to work and his heart attack, the verdict indicates that the jury accepted plaintiff's theory. This determination is clearly reasonable, *Riddle Memorial Hospital v. Dohan, supra.* Accordingly, appellant has

---

7. See Allegheny County Court Rules, Rule 212 (VI)(A)(d).

presented no basis to disturb this aspect of the jury's verdict.

■ J & L also alleges that the trial court erred by excluding the expert opinion of a physician that there was no relationship between Binder's work activities and his heart attack. J & L alleges that it was prejudiced by the exclusion because this opinion would have corroborated a similar one from another doctor. The trial court excluded the corroborative opinion because the hypothetical question on which it was based included no reference to Binder's work activities. Appellant claims that this ruling was error, since the expert testified that his opinion was based on Binder's statement detailing his work on the day he suffered the heart attack. In any event, exclusion of this testimony was harmless. See *Stern v. Vic Snyder, Inc.,* 325 Pa.Super. 423, 433–34, 473 A.2d 139 (1984). The jury was allowed to hear the physician's testimony that if the heart attack was related to Binder's work activities, it would have occurred within an hour of the completion of the work. This testimony corroborated the other opinion evidence in much the same manner as expression of the ultimate conclusion would have. Moreover, the physician also testified that several aspects of Binder's health background actually caused the heart attack. Accordingly, the exclusion of this testimony provides no basis to disturb the jury verdict. See *Robinson v. City of Philadelphia,* 329 Pa.Super. 139, 146, 478 A.2d 1 (1984).

■ Finally, appellant "sincerely doubt[s] that a man with a heart condition will live as long as a man with a healthy heart." Accordingly, it contends that the court erred by failing to instruct the jury to consider the life expectancy of men of plaintiff's age in light of his past heart condition. Appellant neither objected to the admission of plaintiff's life expectancy evidence nor offered evidence which would support the charge it requested. *Cf., Capan v. Divine Providence Hospital,* 270 Pa.Super. 127, 139, 410 A.2d 1282 (1979) (evidence of average life expectancy in wrongful death action which did not assume fact of

decedent's chronic alcoholism was irrelevant to prove decedent's life expectancy). Moreover, appellant did not request the court to charge the jury regarding the alleged limited weight of life expectancy evidence. Accordingly, the question of whether the trial court must instruct the jury to consider life expectancy evidence only in light of plaintiff's particular circumstances has not been preserved for our review.

Judgment affirmed.