Christopher M. OVERBECK, Appellant,

v.

William CATES and Roy Widener
Motor Lines, Appellees.

Superior Court of Pennsylvania.

Argued April 30, 1997.
Filed Aug. 13, 1997.
Reargument Denied Oct. 23, 1997.

James A. Swetz, Stroudsburg, for appellant.

Donna L. Adelsberger, Glenside, for appellees.

Before BECK, POPOVICH, JJ., and
MONTEMURO*, Judge.

POPOVICH, Judge:

This is an appeal from an order of the Court of Common Pleas of Monroe County granting summary judgment in favor of William Cates (Cates) and Roy Widener Motor Lines in an action for personal injuries sustained by appellant. The lower court's order was based on its belief that there was insufficient evidence to conclude that under Restatement (Second) of Torts § 388 Cates had a duty to warn appellant of the dangerous

---

* Retired Justice assigned to Superior Court.

condition of a tire appellant was repairing for Cates. Therefore, the lower court concluded that Cates was not negligent in failing to warn appellant of the tire's condition. On appeal, appellant contends that the lower court erred in granting summary judgment since there was sufficient evidence to establish that Cates had a duty to inform appellant that the tire was dangerous or of the facts which made it likely to be dangerous. We affirm.

Our scope of review is plenary when reviewing the propriety of a lower court's entry of summary judgment. *Schriver v. Mazziotti,* 432 Pa.Super. 276, 638 A.2d 224, 225 (1994), *alloc. denied,* 539 Pa. 638, 650 A.2d 52 (1994). We must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party when determining if there is a genuine issue of material fact. *Chrysler Credit Corp. v. Smith,* 434 Pa.Super. 429, 643 A.2d 1098, 1100 (1994). We will only reverse the lower court's grant of summary judgment if there is a manifest abuse of discretion. *Accu–Weather, Inc. v. Prospect Communications, Inc.,* 435 Pa.Super. 93, 644 A.2d 1251 (1994). Pursuant to Pennsylvania Rule of Civil Procedure 1035(b), summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." [1]

Viewing the record in the light most favorable to appellant, the non-moving party, the record reveals the following pertinent facts: On November 9, 1993, appellant was injured when the tractor trailer tire he was repairing exploded. The tire was brought to the American Falcon Pocono Auto Truck Plaza (American Falcon) by Cates, an employee of Roy Widener Motor Lines. As a result of the incident, on July 15, 1995, appellant filed

a civil complaint, alleging that Cates was negligent in failing to warn him of the tire's dangerous condition. Therefore, under Restatement (Second) of Torts § 388, appellant alleged that Cates was liable for his injuries.[2] On June 28, 1996, Cates filed a motion for summary judgment alleging that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law.

In deposition, Cates testified as follows: On November 9, 1993, he conducted a pre-ride examination of his tractor trailer before he began his haul from Conowingo, Maryland to Philadelphia, Pennsylvania. The examination revealed that all of the tractor trailer's tires had a pressure of 100 PSI, the normal running weight for tractor trailer tires. After delivering his load to Philadelphia, he traveled to Wind Gap, Pennsylvania. Upon arrival in Wind Gap, he inspected his truck's tires. He performed this inspection by "bumping" the tires with a hammer to determine whether they were inflated properly. He noticed that one of the tires was under-inflated. Utilizing a coin operated air pump, he inserted approximately forty pounds of air pressure into the tire, thereby raising the tire's pressure from 60 PSI to 100 PSI. After increasing the tire's pressure in Wind Gap, Cates traveled to Water Gap, Pennsylvania and then to Bartonsville, Pennsylvania. While he was in Bartonsville, he stopped at the American Falcon. There, he ate dinner and then took a nap. After sleeping for approximately five hours, he inspected the tire again. He determined that the tire was "super low," and that it needed to be repaired. He then drove his tractor trailer a short distance to the American Falcon's garage and spoke with a supervisor about the cost of repair. There was no discussion regarding the length of time or the conditions under which the tire lost pressure. After he gave the garage permission to fix the tire, he

---

**1.** Rule of Civil Procedure 1035 has been replaced by Rules of Civil Procedure 1035.1 through 1035.5, effective July 1, 1996. However, since Cates' motion for summary judgment was filed on June 28, 1996, Rule 1035 governs this case. We note that, as the new rules indicate, Rule 1035's requirement that summary judgment should be granted where there is no genuine issue of material fact encompasses a motion which is based on a record which is insufficient to sustain a prima facie case. *See* Pa.R.Civ.P. 1035.1, 42 Pa.C.S.A.

**2.** Appellant also alleged that Roy Widener Motor Lines was vicariously liable for Cates' failure to warn.

left the tractor trailer so that the proper repairs could be made.

The record reveals that after Cates left the tractor trailer, appellant, a mechanic, was instructed to repair the tractor trailer's tire. Appellant mounted the tire on a tire restraining machine and began repairing the tire. At some point, the tire violently exploded. The explosion was the result of the tire separating, thereby releasing air and creating a "zipper" tear along the interior sidewall of the tire. Robert Neu, the parts manager on duty, heard the tire explode, ran into the tire changing room and discovered appellant's bloody, unconscious body lying on the floor. The tire and its rim were still mounted on the tire changing machine with a large "zipper" split along the sidewall. Neu dialed 911 and appellant was taken to the emergency room. Appellant remained in a coma for four days and suffered serious, permanent injuries as a result of the incident. He has no memory of the events surrounding the incident. Particularly, he has no memory of reinflating the tire or of the tire exploding.

The lower court granted Cates' motion for summary judgement, thereby determining that there was insufficient evidence to prove that Cates owed appellant a duty to warn him of the tire's dangerous condition. Specifically, the lower court concluded that there was insufficient evidence to establish that Cates knew or had reason to know that the tire was dangerous or that he had reason to believe that appellant would not realize the tire's dangerous condition. This appeal followed.

■ "Section 388 ... imposes liability for damages caused by suppliers of chattel who fail to use reasonable care to inform likely users of the chattel's dangerous conditions." *Binder v. Jones & Laughlin Steel Corp.*, 360 Pa.Super. 390, 520 A.2d 863, 866 (1987). Our supreme court has held that this duty extends to bailments for repair. *Lambert v. Pittsburgh Bridge and Iron Works*, 463 Pa. 237, 344 A.2d 810 (1975).

Section 388 provides the following:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Here, it is undisputed that the tire was delivered for repair in a dangerous condition, i.e., it was driven on while it was flat or underinflated. The evidence revealed that there is a distinction between a tire which is used while it is flat, a tire which is used in an "underinflated condition" and a tire which is used in a "low" pressure condition. Where the tire is driven on while it is flat or underinflated (80 percent or less of recommended pressure), safety instructions suggest that the tire should not be reinflated without being inspected thoroughly and that special precautions should be taken while the tire is being reinflated. Vincent Altieri's Deposition dated 6/20/96 p. 63. When a tire is used while it is flat or in an "underinflated condition," the tire poses a special risk to a repair person since the tire is inherently weak and prone to exploding. It is also undisputed that Cates did not warn appellant of the tire's dangerous condition or of the facts which made it likely to be dangerous, i.e., driving the tractor trailer while the tire was flat or underinflated. At issue is whether (1) Cates knew or had reason to know that the tire was or was likely to be dangerous for appellant to reinflate and (2) whether Cates had reason to believe that appellant, a qualified mechanic, would not realize the tire's dangerous condition.

In order to show that Cates knew or had reason to know that the tire was dangerous, a jury would be required to find that Cates knew or had reason to know that (1) driving his tractor trailer with a flat or underinflated

tire posed a serious risk to a mechanic who attempted to reinflate the tire, and (2) the tire at issue was used while it was flat or underinflated. We have no difficulty concluding that there was sufficient evidence to prove that Cates knew or had reason to know that the tire at issue was used while it was flat or was used in an "underinflated condition" prior to appellant attempting to reinflate it. Although Cates testified that he never drove his tractor trailer while the tire was flat, appellant's expert witness, Donald R. Phillips, indicated in a letter dated July 14, 1994, that the tire exploded because it "was subject to overheating and fatigue of the sidewall as a result of being 'run flat' by the operator of the tractor trailer." Cates admitted at deposition that he drove the tractor trailer for a significant period of time between Conowingo and Wind Gap with a tire which had sixty percent of the recommended pressure. Cates also admitted at deposition that when the tractor trailer was delivered to the repair station the tire was "super low." However, he was unable to determine for how long or exactly when the tire became "super low." Accordingly, we find that there was sufficient evidence permitting a jury to find that Cates knew or had reason to know that the tire at issue was used while it was flat or underinflated.

■ However, we cannot find that there was sufficient evidence to prove that Cates knew or should have known that driving his tractor trailer with a flat or underinflated tire posed a serious risk to a mechanic who attempted to reinflate the tire. In his request for admissions, appellant requested Cates to admit that, prior to the incident, he was aware that driving a tractor trailer with an underinflated or flat tire could weaken the sidewall of the tire and that a weakened tire could "blowout" or explode while being reinflated. In his response, Cates admitted that he knew that under some circumstances driving a tractor trailer with an underinflated or flat tire could weaken the sidewall of the tire. However, he specifically stated that he believed that the reason one should not drive on a flat or underinflated tire, thereby weakening the sidewall of the tire, was to prevent the tire from becoming hot and catching fire while operating it. He specifically denied being aware that a tire with a damaged sidewall could result in a "blowout" or explode while being reinflated. Moreover, the record reveals that Cates never received any training regarding the repairing/reinflating of tires from which a jury could infer knowledge. William Cates' Deposition 12/12/95 p. 44. During deposition, he stated that his only knowledge concerning the reinflation of tires was that he had observed mechanics using tire cages during the reinflation process. William Cates' Deposition 12/12/95 p. 66. He also stated that during his thirty years as a professional driver he was never asked by a mechanic whether the tire he sought to have reinflated was used while it was flat or underinflated nor was he questioned about any of the other circumstances surrounding the tire's use.

■ In arguing that Cates had the requisite knowledge, appellant suggests that it is well-known that reinflation of any tire which has been operated in a flat or underinflated condition can result in injury or death. Accordingly, he requests that we take judicial notice of this fact and infer that appellant knew that reinflation of the tire was dangerous. This we decline to do. While it may be well-known to appellant, a mechanic, that reinflation of such tires is dangerous, we find that he has failed to prove that this fact is of common knowledge or that Cates, in particular, was aware of this fact. *See Savoy v. Beneficial Consumer Discount Co.*, 503 Pa. 74, 468 A.2d 465, 468 (1983) ("What is so well-known as to be incontestable need not be proven formally."). Since the record reveals no awareness by Cates that reinflation of the tire which was operated in a flat or underinflated condition could result in serious injury or death, we find that the lower court properly concluded that Cates did not know or have reason to know that the tire was or was likely to be dangerous for appellant to reinflate, and, therefore, that Cates did not have a duty to warn appellant of the tire's dangerous condition or of the facts which made it likely to be dangerous.[3] Ac-

---

**3.** Appellant also argues that a statement made by

Cates to an insurance agent during a transcribed

cordingly, the lower court correctly granted summary judgment.[4]

Affirmed.

telephone conversation reveals that Cates knew that reinflation of the tire at issue was danger-ous. Specifically, he alleges that the agent asked Cates whether, prior to the incident, he informed the repair shop that he had driven on the tire while it was flat or low in pressure. Cates re-sponded negatively and told the agent that he had not "run the tire low." He also stated that he knew that the repair shop was suggesting that he drove on the tire while it was low because "that weakens them tires." In the lower court, and on appeal, Cates argued that this statement was not sufficient for the jury to conclude that he knew that reinflation of the tire at issue was dangerous. He also objected to the consider-ation of the transcription since it was an un-sworn exhibit and not a pleading, deposition, answer to interrogatories, admission or support-ing affidavit under Rule 1035. See Defendant's Reply to Plaintiff's Memorandum Contra Defen-dant's Motion for Summary Judgment; Appel-lee's Brief p. 9. We agree that the unsworn telephone conversation can not be considered as part of the record for summary judgment pur-poses. Wheeler v. Johns–Manville Corp., 342 Pa. Super. 473, 493 A.2d 120 (1985).

4. In light of the foregoing discussion, it is unnec-essary for us to determine whether Cates had reason to believe that appellant would realize the tire's dangerous condition.